Randy Kim SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–01289–CR.

Court of Appeals of Texas,
Dallas.

May 26, 1989.

Braden W. Sparks, Dallas, for appellant.

Kathi Alyce Drew, Dallas, for appellee.

Before HOWELL, LAGARDE and WHITTINGTON, JJ.

LAGARDE, Justice.

Randy Kim Smith appeals his conviction for obstructing an entrance to a place of business to which the public had access. TEX.PENAL CODE ANN. § 42.03 (Vernon 1974). Punishment was assessed at five days' confinement and a $500 fine. In eight points of error, appellant claims that section 42.03 of the Texas Penal Code is unconstitutional and that the evidence is insufficient to support his conviction. We overrule all eight points of error and affirm the conviction.

Because several of appellant's points of error require a detailed analysis of the statement of facts, we set forth the follow-

ing summary. On May 23, 1987, appellant, his wife, and his two children picketed the Fairmount Center. Appellant carried a picket sign with an "anti-abortion" message on it. Officer Charles Reynolds testified that on that date, he was dispatched to the Fairmount Center. After arriving, but before entering the clinic, he spoke with the picketers:

> When I arrived at the Fairmount Center, being as the call involved a disturbance with picketers, I first stopped to talk to the individuals outside the building on the public sidewalk, and explained to them, as is my standard procedure, we have several calls like that throughout the year, that just to make sure that they understood that if they were on the public sidewalk picketing, that was their right; but that they needed to make sure they remained moving or kept the public sidewalk open and clear so that no citizens or clients to the business were inconvenienced and had to leave the public sidewalk to get to the business.

At trial, Officer Reynolds confirmed that it was appellant to whom he spoke, and that appellant indicated that he understood that he was to abide by the law and to keep the public sidewalk clear and free in order to permit access to the public and clients. At the time of this conversation, appellant was standing on the public sidewalk immediately in front of, or in close proximity to, the steps leading to the private walkway to the clinic.

After appellant indicated to Officer Reynolds that he understood what was required of him, Officer Reynolds and Officer Christine Carmell went into the clinic to speak with the individuals inside. While inside, Officer Reynolds observed a Weir's Furniture delivery truck park in front; he saw an individual, later identified as Magnus Ruthenborg, carry a chair from the truck down the public sidewalk to the Fairmount Center. At that time, appellant was on the public sidewalk between the private access and the truck. Officer Reynolds then observed the following:

> Mr. Ruthenborg approached [appellant]; and as a result of carrying a medium size [sic] chair, he was unable to pass [appellant], and [appellant] refused to yield on the public sidewalk, causing Mr. Ruthenborg an inconvenience and a safety hazard for that matter by having to step over a brick about [sic] two foot tall wall while carrying a chair attempting to do his job and deliver the chair to the Fairmount Center, which apparently had ordered the furniture.

> . . . .

> At the point where Mr. Ruthenborg and [appellant] came together, they were on a public sidewalk, which the general public has access to, and Mr. Ruthenborg was attempting to get to the two or three steps leading to the private sidewalk, private entranceway into the Fairmount Center; and as a result, he was unable to reach that point because of [appellant's] actions.

Officer Reynolds stated that appellant obstructed the entrance and Ruthenborg breached the retaining wall.

After observing this, Officer Reynolds went outside to speak with appellant who, by this time, had moved back to the stairs leading to the private walkway to the clinic. Officer Reynolds testified:

> I explained to him that it is apparent that the Fairmount Center has ordered some furniture, and that Mr. Ruthenborg was going to be making more trips with the furniture, and it was going to be necessary for him to alter his picketing actions somewhat to allow Mr. Ruthenborg free access to the private entrance from the public sidewalk.

Appellant responded that he had a right to be there and that he did not have to move if he did not want to. Officer Reynolds then informed appellant as follows:

> After he explained to me what his rights were, I then further gave him a second warning and advised [appellant] that it was a violation of the Texas State Penal Code to block or obstruct a private passageway or sidewalk in any manner where it would be an inconvenience to the general public; and as a result of their loading and unloading of the furniture, he was going to be blocking the sidewalk, and he needed to move a little

bit north so that they had access to the building.

Appellant once again informed Officer Reynolds that he did not have to move. Officer Reynolds reiterated his warning: "I advised him that he had been warned twice and been told that it was a violation of Texas State Penal Code, and he was still going to refuse to give way to the public access, [and] I placed him under arrest for obstructing a public sidewalk." Officer Reynolds stated that at the time of his arrest, appellant was not blocking anyone from entering the clinic.

Officer Carmell corroborated Officer Reynolds's testimony that appellant was instructed to leave the sidewalk area directly in front of the walkway leading to the Fairmount Center, that Officer Reynolds informed appellant that he was obstructing the walkway leading to the clinic in violation of the Texas Penal Code, and that appellant refused to move.

Magnus Ruthenborg testified that, as a truck driver/delivery person for Weir's Furniture, he was delivering furniture to the Fairmount Center at about 10:30 a.m. on May 23, 1987. He first came in contact with appellant when he initially obtained the chairs from the back of the truck, got out of the truck, went to take the chairs in, and heard appellant's verbal "gestures," such as "I'm a baby killer, baby murderer." Ruthenborg initially ignored appellant and went around him. Ruthenborg stated:

> I am not a very patient person with regard to verbal abuse; and after a while, it began to get to me, and I lowered myself to his level and began talking back to him, you know, and *I told him to "get the fuck away from me."* And *I asked him to move several times,* and every time I asked him to move, he just ignored me like I wasn't even there, he kept talking to me, [and he] *stepped in front of me. I would try to go around him and he would step back in front of me again.* My partner wouldn't say anything to him—

(Emphasis added.) Ruthenborg further testified that he had six occasions, three trips in and three out, to walk by appellant and that on each of the three trips in, he had a chair in his hands.

Ruthenborg testified that on the second trip from the delivery truck to the clinic:

> *I asked him to move several times* and he would move and he stepped over like this, and when I [sic] went over to step in front of me, and I stepped back like this and he stepped in front of me again, and *I told him to get the fuck out of my way,* that is what I told him, and called him a freak and said, "Leave me alone." And he just continued to talk. And so, I didn't really listen too much to what he said.

(Emphasis added.) Ruthenborg stated that in order to avoid further confrontations he "went over the brick wall a little step, it is probably two feet ... instead of coming this way to deal with [appellant], [Ruthenborg] cut across and [appellant] was talking the whole time." On subsequent trips to and from the clinic, Ruthenborg chose to go over the brick wall and across the lawn. Ruthenborg also testified that although appellant did not force him to go over the brick wall and across the lawn, he would have preferred to walk up the walkway to the clinic.

Both defense witnesses claimed that appellant did not block the passageway to the clinic. Appellant denied that Ruthenborg ever asked him to move. Appellant's wife stated that she noticed that Ruthenborg was uncomfortable in dealing with appellant and testified that she believed that Ruthenborg cut across the lawn to avoid appellant.

█ We must first consider the State's contention that appellant failed to properly preserve his points of error because he raises them for the first time on appeal. Citing *Ellis v. State,* 722 S.W.2d 192, 198 (Tex.App.—Dallas 1986, no pet.), the State maintains that this Court should not consider appellant's first two points of error because appellant's trial counsel failed to raise these points below. We agree with the State that generally appellate courts will not consider any error that counsel could have called, but did not call, to the attention of the trial court at a time when such error could have been avoided or corrected. *Rogers v. State,* 640 S.W.2d 248,

264 (Tex.Crim.App.1982) (opinion on motion for rehearing). However, since *Ellis,* the Court of Criminal Appeals has stated that trial counsel's failure to object to the constitutionality of a statute upon which a defendant's conviction was based does not waive the right to raise that point for the first time on appeal. *Rabb v. State,* 730 S.W.2d 751, 752 (Tex.Crim.App.1987). Thus, we conclude that appellant's first point of error should be considered.

In his first point of error, appellant contends that section 42.03,[1] both facially and as applied, constitutes an impermissible restraint on his freedom. Specifically, appellant argues that he was exercising his right to free speech and to picket an abortion clinic and, therefore, the State's proscription of his activity must be supported by such substantial and compelling interest to justify infringement of his constitutional rights. *See Spence v. Washington,* 418 U.S. 405, 409–10, 94 S.Ct. 2727, 2729–30, 41 L.Ed.2d 842 (1974).

■ Appellant maintains that because there is no compelling interest here, his conviction must be reversed. Appellant asserts that his arrest and subsequent conviction were based on the officers' initial misperception that he had "obstructed" Ruthenborg, thereby requiring Ruthenborg to take an alternate route across the lawn. Appellant contends that, in fact, Ruthenborg *chose* the alternate route rather than face his message: thus, the State had no compelling interest in preserving Ruthenborg's "convenience" to the detriment of his fundamental right to free speech.

The Court of Criminal Appeals considered the constitutionality of section 42.-03[2] under the first amendment to the United States Constitution in *Haye v. State,* 634 S.W.2d 313, 315 (Tex.Crim.App.1982). As explained by the Court:

> The State has the right to regulate the use of city streets and other facilities to assure the safety and convenience of people in their use. *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471. We find that Sec. 42.03, supra protects

the right of the public to the reasonably convenient use of sidewalks and other passageways without an encroachment upon the First Amendment rights of the individual. *Sherman v. State,* supra [626 S.W.2d 520 (Tex.Cr.App.1981.] We find Sec. 42.03, *supra* to not be violative of the First Amendment to the United States Constitution.

*Haye,* 634 S.W.2d at 315. Thus, we conclude that section 42.03 is supported by a substantial and compelling state interest. *See Spence,* 418 U.S. at 409–10, 94 S.Ct. at 2729–30. Moreover, the fact that Ruthenborg chose an alternate route is insignificant in light of the fact that Ruthenborg repeatedly "asked [appellant] to move" and subsequently told appellant to "get the fuck away from" Ruthenborg and "to get the fuck out of" Ruthenborg's way. Ruthenborg's alternate route was less than voluntary considering appellant's refusal to move in response to Ruthenborg's repeated requests. Accordingly, we overrule appellant's first point of error.

In his second point of error, appellant asserts that section 42.03, as drafted and as applied, is unconstitutionally vague because it fails to fairly warn citizens exercising their right to free speech that any resulting "inconvenience" to a third party may subject them to arrest, prosecution, and conviction. Appellant urges this Court to reverse his conviction; otherwise, whenever a controversial social or religious message is lawfully expressed by a picketer, thereby causing a third party merely to alter his course of travel, the citizen exercising such rights may be arrested. Appellant also argues that section 42.03 is vague because it does not fairly differentiate between permissible and impermissible "inconvenience," thereby allowing the police unfettered discretion in making that differentiation and resulting in a significant and unwarranted chill on citizens' fundamental right of free speech.

■ In response, the State asserts that appellant does not have standing to com-

---

**1.** All section references are to the Texas Penal Code unless otherwise specified.

**2.** We note that appellant asserts that section 42.03 is unconstitutional but does not challenge section 42.04.

plain of the vagueness of section 42.03. The State contends that one who engages in conduct that is clearly proscribed by a statute cannot complain of the vagueness of the law as it might possibly be applied either to other conduct of that person or to other persons. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186–1191, 71 L.Ed.2d 362 (1982); *Kingsley v. State,* 744 S.W.2d 191, 193 (Tex.App.—Dallas 1987, pet. granted). The State maintains that under any construction of section 42.03, the record in this case establishes that appellant's conduct clearly constituted a safety hazard, which is the very type of act the statute prohibits.

A vagueness challenge is applicable to all criminal laws and not merely those that regulate speech. *Bynum v. State,* 767 S.W.2d 769, 773 (Tex.Crim.App.1989). As a fundamental proposition, all criminal laws must give notice to the populace as to what activity is made criminal so as to provide fair notice to persons before making their activity criminal. *Id.* In examining a criminal statute for vagueness, the initial inquiry must be whether the ordinary, law-abiding individual would have received sufficient information that his or her conduct risked violating a criminal law. *Id.* at 773–774. Assuming the enactment implicates no constitutionally protected conduct, a court should uphold the challenge only if the enactment is impermissibly vague in all of its applications. *Hoffman,* 455 U.S. at 494–95, 102 S.Ct. at 1191–92. An individual who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. *Id.*

However, a defendant may challenge the constitutionality of a statute on vagueness grounds, even though the statute may not be vague as applied to his conduct, where the statute at issue purports to regulate or proscribe rights of speech or press protected by the first amendment. *Coates v. City of Cincinnati,* 402 U.S. 611, 619, 91 S.Ct. 1686, 1690, 29 L.Ed.2d 214 (1971) (White, J., dissenting); *see Bynum,* at 773–774, *quoting Hoffman,* 455 U.S. at 499, 102 S.Ct. at

1193. Only those statutes that purport to regulate "only spoken words," rather than conduct, *see Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973), are considered statutes that "purport to regulate rights of speech." *Cf. Gooding v. Wilson,* 405 U.S. 518, 519–20, 92 S.Ct. 1103, 1104–05, 31 L.Ed.2d 408 (1972) (statute prohibiting "opprobrious words or abusive language, tending to cause a breach of peace" punishes only spoken words and does, therefore, attempt to regulate or proscribe rights of speech protected by the first amendment); *Plummer v. City of Columbus, Ohio,* 414 U.S. 2, 2–3, 94 S.Ct. 17, 17–18, 38 L.Ed.2d 3 (1973) (statute prohibiting "abuse [of] another by using menacing, insulting, slanderous, or profane language" was facially unconstitutional). In this instance, section 42.03 purports to regulate conduct, not speech. Thus, we conclude that the "special" standing requirement when statutes purporting to regulate speech are implicated is not applicable here. Appellant only has standing to challenge the statute as applied to his conduct.

■ We note that appellant fails to cite any authority in support of his proposition that the term "inconvenience" is unconstitutionally vague.[3] However, we need not address this issue because the information upon which appellant's conviction is based charges him with *"standing in a position in front of the walkway refusing to move."* Thus, the conduct with which appellant is charged and of which appellant was convicted falls squarely within the former, ("render[s] impassable") rather than the latter ("render[s] passage unreasonably inconvenient or hazardous") definition of "obstruct," as set forth in section 42.03(b). Therefore, we conclude that appellant has no standing to complain of the definition of "unreasonably inconvenient." Accordingly, we overrule appellant's second point of error.

In his third point of error, appellant contends that the trial court erred in finding him guilty because the information does

---

**3.** We do note that the statute specifically states *"unreasonably* inconvenient." TEX.PENAL CODE ANN. § 42.03(b) (Vernon 1974) (emphasis supplied).

not state an offense under the law. Appellant claims that by alleging that appellant obstructed an entrance to a place of business "by standing in a position in front of the walkway refusing to move," the charging instrument unsuccessfully attempts to further specify the manner and means in which the obstruction occurred. He asserts that because the terms "entrance" and "walkway" are not defined in section 42.03 or any other provision within the Texas Penal Code, those words should be given their original meaning and common usage. Appellant further contends that because "entrance" is defined as "door, opening or passage for entering," and "walkway" is defined as "any passage used by one walking" or "a sidewalk, path, promenade," and because the information in this cause alleges that appellant "obstruct[ed] an entrance ... by standing in a position in front of the walkway," the relationship between the term "walkway" and the term "entrance" renders the allegation indecipherable. Appellant argues that the physical relationship between the walkway and the entrance is not apparent and is not alleged in the information; that by all accounts, he was pacing back and forth on the *sidewalk*, rather than the walkway leading to the entrance of the building, and that the information improperly alleges that he stood in a position in front of the *walkway*. Appellant suggests that it would have been a very simple matter to state explicitly that the appellant stood in the middle of the pathway leading to an entrance and thereby prevented passageway to the entrance, or made such passageway dangerous or unreasonably inconvenient.

The record discloses no motion to quash the information for failure to state an offense. Effective December 1, 1985,[4] article 1.14(b) of the Code of Criminal Procedure provides that if a defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information *before* the date on which the trial on the merits commences, he waives and forfeits the right to object on appeal or in any other post-conviction proceeding. *See* TEX. CODE CRIM.PROC.ANN. art. 1.14(b) (Ver-

non Supp.1989). The purpose of the rule is explained as follows:

A major objective of this new rule was to aid in the elimination of "sand bagging" by defense counsel. *Id.*, at 91. The habit of defense counsel of not objecting until the last minute to a defective indictment or information in the trial court and then objecting on appeal if the defendant was found guilty was not favored. Consequently, the new rule is drafted in such a way as to allow the prosecution to correct a defective indictment or information before the cause commences in the trial court. If a defective indictment or information is not objected to before the date on which the trial on the merits commences, a defendant waives any rights stemming from such defect. *See Aylor v. State*, 727 S.W.2d 727, 730 (Tex. App.—Austin 1987, no writ).

*Van Dusen v. State*, 744 S.W.2d 279, 280 (Tex.App.—Dallas 1987, no pet.); *see Studer v. State*, 757 S.W.2d 107, *passim* (Tex. App.—Dallas 1988, pet. granted).

■ However, we recognize that article 1.14(b) is not applicable in situations where a charging instrument wholly fails to charge an offense. *See Milam v. State*, 742 S.W.2d 810, 815 (Tex.App.—Dallas 1987, pet. granted). In *Milam*, the indictment alleged conduct which was not illegal at the time the conduct occurred. This Court noted in *Milam* that the complained of indictment was presented before the 1985 amendments to the Texas Constitution and article 1.14. TEX.CODE CRIM.PROC. ANN. art. 1.14 (Vernon Supp.1989). In *Milam*, this Court determined that the Texas Constitution defines an indictment as "a written instrument presented to a court by a grand jury *charging a person with the commission of an offense.*" *Id.* Therefore, in *Milam* the failure to charge the defendant with criminally prohibited conduct prevented the instrument presented by the grand jury from meeting the constitutional requirements of an indictment. *Id.* Thus, the defendant's failure to object to the instrument was not fatal to his appeal. *Id.* Because the instrument presented to

---

**4.** The information in this case was filed on June    18, 1987.

the trial court did not constitute an indictment as defined by the Texas Constitution, the trial court's jurisdiction was not invoked. *Id.*

We conclude that *Milam* is distinguishable from the present case because the information in the instant case does charge criminally prohibited conduct. Thus, appellant has failed to preserve error. However, even assuming that error is preserved, we further conclude that the information is sufficient for reasons that follow.

█ It is the general rule that an indictment or information which tracks the language of the penal statute in question is legally sufficient to provide an appellant with notice of the charged offense. *See Marras v. State,* 741 S.W.2d 395, 401 (Tex. Crim.App.1987); *Clark v. State,* 577 S.W.2d 238, 240 (Tex.Crim.App.1979). The information in the case at bar states that appellant did "then and there without legal privilege or authority, knowingly and intentionally obstruct an entrance to a place of business to which the public had access by standing in a position in front of the walkway refusing to move." Thus, as worded, the information in this case alleges that appellant: (1) knowingly and intentionally; (2) without legal privilege or authority; (3) obstructed; (4) an entrance; (5) to which the public had access. The necessary elements of an offense under section 42.-03(a)(1) are that the accused: (1) knowingly, intentionally, or recklessly; (2) without legal privilege or authority; (3) obstructs; (4) a highway, street, sidewalk, railway, waterway, elevator, aisle, hallway, entrance, or exit; (5) to which the public, or a substantial group of the public, has access. We conclude that the information does adequately charge appellant with the offense of obstructing a passageway and that the complained of language goes simply to manner and means, a nonjurisdictional consideration.

Moreover, although appellant does not appear to argue that he failed to receive adequate notice upon which to prepare his defense, we hold that any defect in the charging instrument did not prejudice the substantial rights of appellant. *Adams v. State,* 707 S.W.2d 900, 903 (Tex.Crim.App. 1986). In order to determine whether appellant received adequate notice, we must first decide whether the charging instrument failed to convey some requisite item of notice. *Id.* Even if the information in this case failed to convey some requisite item of notice, upon review of the record, we conclude that the alleged defect did not impact on the defendant's ability to prepare his defense. *Id.* Appellant's defensive strategy at trial had nothing to do with the definitions of "walkway" and "entrance" upon which the State relied, and appellant does not explain how his ignorance regarding the definition and use of the terms "entrance" and "walkway" hindered his defense. *See id.* at 904. Accordingly, we overrule appellant's third point of error.

In points of error four through eight, appellant contends that the evidence is insufficient to sustain the conviction because: (1) the evidence fails to establish that an order pursuant to section 42.04 was given and not promptly obeyed; (2) the evidence affirmatively establishes that an order given pursuant to section 42.04 was prospective in nature; (3) the evidence fails to establish that appellant obstructed an entry after receiving an order to desist, disperse, or otherwise remedy his violation; and (4) the evidence affirmatively establishes that appellant did not obstruct an entrance to a place of business. Section 42.04, referred to by appellant, provides the following defense:

(a) *If conduct* that would otherwise violate Section 42.01(a)(5) (Unreasonable Noise) or 42.03 (Obstructing Passageway) of this code *consists of speech or other communication,* of gathering with others to hear or observe such speech or communication, or of gathering with others *to picket or otherwise express in a nonviolent manner* a position on social, economic, political, or religious questions, *the actor must be ordered to move, disperse, or otherwise remedy the violation prior to his arrest if he has not yet intentionally harmed the interests of others which those sections seek to protect.*

(b) *The order* required by this section *may be given by a peace officer,* a fireman, a person with authority to

control the use of the premises, or *any person directly affected by the violation.*

(c) It is a defense to prosecution under Section 42.01(a)(5) or 42.03 of this code:

(1) that in circumstances in which this section requires an order no order was given;

(2) that an order, if given, was manifestly unreasonable in scope; or

(3) that an order, if given, was promptly obeyed.

(Emphasis added.)

Our review of the sufficiency of the evidence is limited to determining whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Girard v. State,* 631 S.W.2d 162, 163 (Tex.Crim.App. [Panel Op.] 1982); *Lopez v. State,* 630 S.W.2d 936, 940 (Tex. Crim.App. [Panel Op.] 1982).

Appellant contends that he was expressing his views about abortion in a nonviolent manner, and that he clearly raised the defense of the application of section 42.04. Appellant asserts that he met the burden of producing evidence to raise a defense under section 42.04, and thus, the prosecution had the burden of persuasion to disprove it beyond a reasonable doubt. Appellant argues that because the evidence clearly supports inferences other than his guilt, a finding of guilt beyond a reasonable doubt is not a rational finding. *Wilson v. State,* 654 S.W.2d 465, 472 (Tex. Crim.App.1983) (opinion on rehearing). Appellant also maintains that he was not arrested for his failure to obey an order and that he was not ordered to remedy a violation. He further contends that if, in fact, any request or order was given, it was prospective in nature and could not have been promptly obeyed.

■ In this case, appellant was charged with obstruction of a passageway, pursuant to section 42.03(a)(1). In order to convict appellant once a defense is raised, the State must prove that an order "to move, disperse, or otherwise remedy the viola-

tion" was given pursuant to section 42.04. Section 42.04(b) specifies that any "order required" may be given by a "peace officer" or "any person directly affected by the violation." Thus, an order need not come solely from a police officer but may be given by anyone whose passage may be obstructed. We conclude from the evidence that Ruthenborg was a "person directly affected" by appellant's obstruction because appellant obstructed Ruthenborg as he attempted to walk down the public sidewalk to the steps and up the private walkway to the entrance of the clinic. The record reflects that appellant blocked Ruthenborg's access on two separate occasions. Ruthenborg testified that the first time he encountered appellant, he told appellant to "get the fuck away from [Ruthenborg]" and that appellant then stepped in Ruthenborg's way twice when Ruthenborg tried to go around appellant. On his second trip, Ruthenborg again encountered appellant, appellant stepped in front of Ruthenborg twice as Ruthenborg tried to step aside, and once again, Ruthenborg told appellant to "get the fuck out of [Ruthenborg's] way." Thus, the evidence is sufficient, when viewed in the light most favorable to the verdict, to establish that appellant did stand in a position in front of Ruthenborg so as to render the walkway impassable. In addition, the evidence reflects that Officer Reynolds told appellant to remain "moving or [keep] the sidewalk open and clear," to "alter his picketing actions to allow Ruthenborg free access to the private entrance," and to "move a little bit north." Accordingly, we hold that this evidence is sufficient to establish that appellant was ordered several times to move and to alter or otherwise remedy the violation by a peace officer and a "person directly affected by the violation."

We further conclude that the orders to appellant were not prospective in nature. Moreover, even if Officer Reynolds' final order ("move a little bit north so that they [have] access to the building") was prospective in nature, appellant had previously been ordered by Ruthenborg and Officer Reynolds to move. Points of error four

through eight are overruled. We affirm the trial court's judgment.