Bertha BARRON, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–99–00398–CR.

Court of Appeals of Texas,
El Paso.

April 12, 2001.

Jaime E. Gandara, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., Tom A. Darnold, Asst. Dist. Atty., El Paso, for State.

Before BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

LARSEN, Justice.

Appellant Bertha Barron appeals her conviction for obstructing a highway or other passageway.[1] She was found guilty by a jury and sentenced to thirty days' confinement and a $100 fine, probated for three months. On appeal she challenges the admission of extraneous offense evidence and the trial court's failure to grant a directed verdict. We affirm.

## FACTS

On June 11, 1997, members of an El Paso labor organization known as La Mujer Obrera gathered at the Ysleta Port of Entry to protest against the economic effects of the North American Free Trade Agreement (NAFTA). Initially, the protesters demonstrated on the sidewalk and did not impede or obstruct traffic. Uniformed police officers from the El Paso Police Department spoke with a leader of the organization, Guillermo Glenn, advising him that protesters should stay out of the roadway and not interfere with the flow of traffic.

Eventually, however, protesters blocked the north and southbound commercial lanes of traffic for the port of entry, five or six people standing in the road with a yellow rope and a banner that read, "NAFTA Gate is closed." The officers then approached Glenn and advised him that if the protestors did not remove the blockade within five minutes, they would begin making arrests. When the protestors failed to remove the obstruction, Deputy Chief of Police Carlos Leon again spoke with Glenn, who responded by calling to the other protestors, "Que dicen?" The protestors did not move. Officers began directing the protestors to move from the roadway, and arresting those who re-

---

1. See TEX. PEN.CODE ANN. § 42.03(a)(1) (Vernon 1994).

fused to comply. Barron was one of the protestors arrested. Barron testified she was never ordered by a police officer or anyone else to stop blocking traffic.

### Admission of Extraneous Offense Evidence

■ In her first issue for review, Barron contends that the trial court erred in admitting into evidence at the guilt/innocence stage of trial an extraneous offense or transaction. She argues that the testimony concerning whether the protestors had obtained a city permit for their demonstration constitutes an extraneous offense or transaction that is not relevant to the issue of whether the protestors had authority, and serves only to prejudice the jury. During the direct examination of Commander Armando Nava, the prosecutor asked Nava if the protestors had a city permit for their demonstration.[2] Nava testified that the defendants did not have a permit that day. Nava also testified neither he nor any of the other officers had given permission to the protestors to obstruct the roadway.

■ Admission of extraneous offense evidence is generally within the trial court's discretion.[3] An abuse of discretion standard is applied to decisions under both Texas Rules of Evidence 404(b) and 403.[4] If the trial court's decision is within the "zone of reasonable disagreement," the decision will be upheld.[5] If an objection is made to extraneous offense evidence, the proponent of the evidence must persuade the trial court that the evidence has relevance apart from character conformity: that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity, or preparation leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing the absence of mistake or accident.[6]

Texas Rule of Evidence 401 defines relevant evidence as that evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[7] All relevant evidence is generally admissible.[8] Here, the evidence concerning the permit was relevant to establish an element of the offense, whether the demonstrators had authority for their conduct.[9] Thus, the trial court did not abuse its discretion in admitting the evidence. Barron's first issue for review is overruled.

### Sufficiency of the Evidence

■ In her second issue for review, Barron contends that the trial court erred in denying her motion for directed verdict

---

2. Nava testified that a permit could be obtained from the city to allow demonstrations of twenty-five or more individuals.

3. *Montgomery v. State,* 810 S.W.2d 372, 390 (Tex.Crim.App.1990) (opin. on rehearing); *Willis v. State,* 932 S.W.2d 690, 696 (Tex. App.—Houston [14th Dist.] 1996, no pet.).

4. *Rankin v. State,* 974 S.W.2d 707, 718 (Tex. Crim.App.1996); *Montgomery,* 810 S.W.2d at 391.

5. *Rankin,* 974 S.W.2d at 718; *Montgomery,* 810 S.W.2d at 391.

6. *Montgomery,* 810 S.W.2d at 387–88; *Powell v. State,* 5 S.W.3d 369, 383 (Tex.App.—Texarkana 1999, pet. ref'd), *cert. denied,* 529 U.S. 1116, 120 S.Ct. 1976, 146 L.Ed.2d 805 (2000).

7. Tex.R. Evid. 401.

8. Tex.R. Evid. 402.

9. *See* Tex. Pen.Code Ann. § 42.03(a)(1) (Vernon 1994); *Powell,* 5 S.W.3d at 383. Because we find that the evidence was relevant to establish an elemental issue, we do not address the State's argument that the evidence constituted "same transaction contextual evidence."

because she established a defense to prosecution. We treat a point of error complaining of a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence.[10] Evidence is legally sufficient if, after reviewing the evidence in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt.[11] This Court's duty is not to reweigh the evidence from reading a cold record, but to position itself as a final, due process safeguard insuring only the rationality of the fact finder.[12]

Barron was charged with violating Texas Penal Code section 42.03, which prohibits a person from, without legal privilege or authority, intentionally, knowingly, or recklessly obstructing a highway or other passageway to which the public or a substantial group of the public has access.[13] Under Texas Penal Code section 42.04, if conduct that would otherwise violate the statute consists of speech or other communication, of gathering with others to hear or observe such speech or communication, or of gathering with others to picket or otherwise express in a non-violent manner a position on social, economic, political, or religious questions, the actor must be ordered to move, disperse, or otherwise remedy the violation prior to arrest if he or she has not yet intentionally harmed the interests of others which that section seeks to protect.[14] It is a defense to prosecution if, in circumstances requiring an order, no order was given.[15] Barron contends that because she was not personally given an order, she cannot be guilty of the offense.

It is undisputed that La Mujer Obrera's demonstration was political speech within the protection of section 42.04; it is likewise undisputed that the only individual directly ordered to disperse was Guillermo Glenn, and that Barron was never personally given such an order.

When determining the sufficiency of the evidence to disprove a defendant's statutory defense, the State is not required to affirmatively produce evidence that refutes defendant's statutory defense, but rather to prove its case beyond a reasonable doubt.[16] The jury is free to reject or accept defensive evidence.[17]

Reviewing the evidence in the light most favorable to the verdict, we find that a rational jury could have found beyond a reasonable doubt the elements of the offense of obstruction of a highway or passageway.[18] That is, the jury could have

**10.** *Williams v. State,* 937 S.W.2d 479, 482 (Tex.Crim.App.1996); *Cook v. State,* 858 S.W.2d 467, 470 (Tex.Crim.App.1993).

**11.** *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Williams,* 937 S.W.2d at 482.

**12.** *Williams,* 937 S.W.2d at 483.

**13.** *See* Tex. Pen.Code Ann § 42.03(a)(1) (Vernon 1994).

**14.** *See id.* at § 42.04(a).

**15.** Section 42.04(c) provides: "It is a defense to prosecution under Section 42.01(a)(5) or 42.03:(1) that in circumstances in which this section requires an order no order was given;

(2) that an order, if given, was manifestly unreasonable in scope; or (3) that an order, if given, was promptly obeyed." *See id.* at 42.04(c).

**16.** *Saxton v. State,* 804 S.W.2d 910, 913 (Tex. Crim.App.1991); *Campbell v. State,* 832 S.W.2d 128, 133 (Tex.App.—Corpus Christi 1992, pet. ref'd).

**17.** *Saxton,* 804 S.W.2d at 914.

**18.** In addition to defining the applicable law, the court's charge contained the following jury instructions: "Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Bertha Barron, on or about June

found that Barron intentionally, knowingly, or recklessly and without legal privilege or authority obstructed a passageway to which a substantial group of the public has access.[19]

Barron asserts that the defense under section 42.04 was proven and precludes her conviction. Specifically, she argues that she and the other demonstrators, who were exercising their freedom of speech, were not given a direct notice or order to move, and thus could not be arrested without such order. We disagree, believing that a fact issue was presented to the jury on the defense, which the jury resolved against Barron and her compatriots.

Officers were called into the Ysleta Port of Entry and arrived on the scene around 1 p.m. Nava and Lieutenant Robert Feidner, a special operations lieutenant with the Riot Control Unit/Emergency Response Team, advised Glenn, whom the officers knew to be a leader of the group, that they could not block the roadway or interfere with the flow of vehicular or pedestrian traffic. Officers rerouted some of the traffic to avoid any excessive amounts of traffic in the area, even though there was no blockage at that time. Around 2 p.m. the protestors brought out a rope hung with a banner proclaiming "NAFTA Gate is closed" and strung it across the road, held up by five or six demonstrators. After the demonstrators began blocking traffic, Lieutenant Feidner and a customs agent advised Glenn that the group was violating the law and arrests would be made if necessary. Sergeant Robert Pisarcik, Special Operations Supervisor, also advised Glenn that the protestors had five minutes to vacate the bridge or arrests would begin.

Deputy Police Chief Carlos Leon arrived on the scene around 2:15 p.m. and saw that traffic was not moving because protestors were holding a rope across the roadway. After being briefed on the situation, Leon approached Glenn and advised him that he needed to remove the rope and allow the traffic to proceed, and that if the obstruction was not removed in five minutes, the protestors would be arrested. Leon testified that Glenn kept looking back at the group for input from them as to whether they wanted to continue the blockade or to leave. When the five minutes expired, Leon approached Glenn again for his decision. Leon testified that during his dialogue with Glenn, he asked him whether he had spoken with his group and what their decision was, and that he observed Glenn

11, 1997, in El Paso County, Texas, did then and there, without legal privilege and authority, intentionally or knowingly or recklessly obstruct a highway namely: passageway to Ysleta Port of Entry, to which the public and a substantial group of the public has access to wit: by standing on said highway and holding a rope across said highway, then you will find the defendant guilty. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty." "If the conduct alleged to be in violation of law consists of speech or other communication, of gathering with others to hear or observe such speech or communication, or of gathering with others to picket or otherwise express in a nonviolent manner a position on social, economic, political, or religious questions, the Defendant must be ordered to move, disperse, or otherwise remedy the violation prior to her arrest if she has not yet intentionally harmed the interests or others which those sections seek to protect. The order may be given by a peace officer, a fireman, a person with authority to control the use of the premises, or any person directly affected by the violation. An order is not required if she has intentionally harmed the interest of others."

19. See *Bustillos v. State*, 832 S.W.2d 668, 673 (Tex.App.—El Paso 1992, pet. ref'd); *Robles v. State*, 803 S.W.2d 473, 476–77 (Tex.App.—El Paso 1991, no pet.); *Smith v. State*, 772 S.W.2d 946, 953 (Tex.App.—Dallas 1989, pet. ref'd).

speaking with his fellow protestors. At the conclusion of Leon's conversation with Glenn, Glenn turned to the group and called, "Que dicen?" and "Que dicen ustedes?" which translates "What do you say?" Officers then arrested only those protestors blocking the road.

We find a reasonable jury could infer that the orders given to Glenn also provided notice to the other protestors, including Barron. Feidner testified that he had dealt with Glenn on several prior occasions, as the representative of La Mujer Obrera and the organizer of several demonstrations in downtown El Paso. Feidner stated that the police generally try to identify a group leader or spokesperson, so that they may convey their message to the entire group through that leader, without having to speak with each individual person. Nava also testified that by identifying Glenn as the leader, he could explain the rights of the group to Glenn, and that the group normally listens to Glenn and follows his leadership. Leon testified that he did not speak with the individual protestors because he spoke with their leader, Glenn, whom Leon has dealt with in past situations. We think it is important that the videotape of the protest reflects a disciplined, orderly group who communicated amongst themselves, and it also reflects Glenn addressing the group immediately after conversing with officers. We believe a reasonable jury could conclude he was conveying to the group what had just been said. During the warnings he gave Glenn, Leon asked Glenn if he had spoken with the other members of his group, and observed Glenn speaking with the other members. Glenn asked the other protestors "What do you say?" from which the jury could infer the others knew they had been ordered to disperse.

Although it would have been the better practice to personally inform each protestor of his or her imminent arrest, we cannot say the defendants proved a failure to give the required warning as a matter of law. Rather, it was a jury question and we must defer to the jury's determination. We find the trial court did not err in denying Barron's motion for directed verdict.

Because we find there was a fact question on this issue, we do not reach the State's second argument, that the protestors had intentionally harmed the interests of others, and therefore were not entitled to a warning before arrest in any event. Barron's second issue for review is overruled.

## CONCLUSION

This Court respects the right of this defendant, and the members of her organization, to peaceably assemble and express their views on matters of importance to the community. The record here, however, supports the conclusion that these protestors made an informed decision to continue obstructing a roadway after having been repeatedly warned they would be arrested if they did so. A jury, after hearing all the evidence and having been charged on the elements of the offense as well as the defense raised, determined the protestors had broken the law. We will not disturb that finding. We affirm the judgment of the trial court.