Criminal Case Template












COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



DANTE ALEXANDER CANAVA,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§



§


§


§


§

No. 08-01-00163-CR


Appeal from the


106th District Court


of Gaines County, Texas


(TC# 01-3112)


MEMORANDUM OPINION



 This is an appeal from a jury conviction for the offense of engaging in organized
criminal activity. The jury assessed punishment at thirteen (13) years' imprisonment in the
Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000. We
affirm the judgment of the trial court. 

I. SUMMARY OF THE EVIDENCE


 Appellant was charged by indictment with the offense of engaging in organized
criminal activity alleged to have occurred on February 5, 2000 in Gaines County, Texas. The
indictment maintained that Appellant did with the intent to establish, maintain, and
participate in a combination consisting of Appellant, Anthony Jamael Savage, Jesse John
Barrientes III and Felipe T. Castillo, intentionally and knowingly commit the offense of
deadly conduct. The indictment also alleged that Appellant participated in that same
combination and did intentionally and knowingly commit the offense of deadly conduct as
members of a criminal street gang.

 The application paragraph in the court's charge to the jury charged on engaging in
organized criminal activity by committing the offense of deadly conduct. The jury was 
instructed regarding engaging in organized criminal activity as a member of a criminal street
gang and committing the offense of deadly conduct. There was also an instruction regarding
the lesser included offense of deadly conduct both individually and as a party. 

 The case revolves around a drive-by shooting that occurred in Seminole, Texas on
February 5, 2000. The State presented the testimony of Anthony Savage, one of the
individuals involved in the incident. He testified that he was in a vehicle with Jesse
Barrientes, Felipe Castillo, and Appellant. Appellant was driving the vehicle. As they drove
through a block, Savage was told to lean his seat forward. Appellant and Barrientes had
handguns. Appellant started shooting out the window at a truck and Barrientes joined in. 
They then sped off. 

 At the pretrial hearing on Appellant's motion to suppress the evidence, the parties
stipulated to the facts that would be adduced concerning the seizure of various items of
evidence pursuant to a warrantless search of Appellant's vehicle. The stipulation revealed
that the Ensor family lived at 715 Southwest Avenue J in Gaines County, Texas. A neighbor
of the Ensor's, Janet Smith, heard some loud sounds that she took to be exploding
firecrackers. She went outside and saw a dark colored car with a fin on the back turning the
corner while "peeling its tires." As she spoke to Martin Ensor, she noticed that the window
of Ensor's truck was shattered and there were several bullet holes in the truck. She called
the police to report the incident. This information was relayed to local law enforcement
entities. 

 Gabriel Medrano, a Texas Department of Public Safety Officer, responded to the call. 
He proceeded to a county road leading from Seminole to Odessa. After positioning his
vehicle on that road for a period of time, he proceeded back to Seminole. He then observed
a dark colored vehicle with a fin on the back which matched the description of the vehicle
involved in the drive-by shooting. When he met the vehicle, the four occupants turned and
stared at him. As Medrano followed the vehicle, he observed movement and shuffling about
on the part of the backseat passengers. One of the passengers in the rear seat was wearing
a red bandana, red cap, and a red shirt. From training and experience, Medrano associated
this type of dress with the Blood street gang. As the reported crime was a drive-by shooting,
he felt that this was the vehicle involved in the incident. The officer followed the four
individuals in the vehicle to a residence. All four quickly got out of the vehicle without
looking at Medrano and they rapidly proceeded toward the house. The officer called them
back and he made contact with the four individuals. He looked through the window of the
vehicle and he saw two boxes of ammunition. Through communication with other officers
he observed that one of the boxes matched the caliber of shells found at the crime scene. 

 Another police officer arrived at the scene who had assisted in processing the shell
casings found at the crime scene. He also observed through the car window that one of the
ammunition boxes matched the shell casings found at the crime scene. He asked Appellant,
the driver of the vehicle, for permission to search the car. Appellant refused permission. He
informed Appellant that he was going to search the vehicle and he asked Appellant for the
car keys. Appellant gave the officer a set of car keys to a Honda vehicle but they would not
open the door of the Saturn Appellant had been driving. Appellant stated he did not know
the location of the keys. The officers opened the car door utilizing a "slim jim" device. They
seized the ammunition and guns from inside the vehicle. After hearing the testimony, the
court denied the motion to suppress the evidence. 

 During the trial, the State approached the bench and informed the court of its intent
to present evidence of an extraneous drive-by shooting committed by Appellant in Odessa,
Texas approximately one month prior to the shooting that occurred in the present case. 
Appellant argued that the cases were dissimilar in that in the Odessa shooting there had been
an altercation between the parties, a rifle was used instead of a handgun as in the instant case,
and, in the Odessa case, Appellant turned himself in and admitted to the offense. The
prosecutor asserted that the proffered evidence was for the purpose to show Appellant was
a member of a gang, and that the extraneous offense would prove motive and intent. After
arguments of counsel, the court ruled that it would allow the introduction of the testimony
to demonstrate proof of Appellant's intent, knowledge, motive, and membership in a criminal
street gang. The court gave the jury a limiting instruction regarding their utilization of the
extraneous offense. 

 The State then utilized the testimony of Ricky Smith of the Odessa Police Department. 
He testified that he had received the assignment to investigate a drive-by shooting that
occurred in Odessa on December 28, 1999. During this shooting, several vehicles and a
house were struck by bullets. Appellant was a suspect in the shooting. The next day
Appellant and his mother voluntarily appeared at the police station and spoke to Smith. 
Appellant admitted that he had participated in the drive-by shooting and he had driven the
car during the shooting. He related that he knew the shooting was to occur and he had
instructed the shooter on how to do the shooting and he selected the targets. Appellant stated
to Smith that he was excited by the adrenaline rush of participating in the shooting. On
cross-examination, Smith testified that the individuals who were with Appellant during the
Odessa shooting were not the same people who accompanied Appellant during the shooting
in Seminole. 

 Kim Ogg testified for the State as an expert on gangs and gang violence. She testified
that a criminal street gang regularly or continuously engages in criminal activity and operates
as a unit where the membership knows one another and there are identifiable leaders and
symbols. Ogg stated that Appellant was a member of a criminal street gang called the Bloods
and a subset of that gang called the Latin King Nation. She stated that drive-by shootings
are typical of the type of criminal activity that such gangs would engage in. 

II. DISCUSSION


 In Issue No. One, Appellant asserts that the court abused its discretion in failing to
grant his motion to suppress the evidence. In reviewing an appeal from the trial court's
denial of a motion to suppress, great deference is afforded to the trial court's decision on
mixed questions of law and fact that turn on an evaluation of credibility and demeanor.
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, for mixed questions
of law and fact which do not fall within this category, an appellate court may conduct a de
novo review of the trial court's ruling. Hernandez v. State, 957 S.W.2d 851, 852 (Tex. Crim.
App. 1998) (citing Guzman ). In other words, de novo review applies only when the facts
are undisputed. State v. Jennings, 958 S.W.2d 930, 932 (Tex. App.--Amarillo 1997, no pet.).
Also, questions involving reasonable suspicion and probable cause permit an appellate court
to conduct a de novo review. See Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App.
1997). Because the facts in the instant case are undisputed, we will conduct a de novo
review. 

 The search of an automobile is constitutionally permissible under both the United
States and Texas Constitutions provided a police officer has probable cause to believe a
crime has been committed and there is contraband located somewhere in the vehicle. Hollis
v. State, 971 S.W.2d 653, 655 (Tex. App.--Dallas 1998, pet. ref'd). Exigent circumstances
are not required in addition to probable cause to justify a search under the automobile
exception. Id. When the automobile exception applies, officers have the right to search the
entire vehicle. United States v. Ross, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572
(1982). When the officer has facts and circumstances within his knowledge and about which
he has reasonably trustworthy information to warrant a person of reasonable caution to
believe a crime has been committed, an officer has probable cause. Hollis, 971 S.W.2d at
656 (citing Amores v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991)).

 At the hearing on the motion to suppress the evidence, Appellant conceded that the
police officers had probable cause to search the vehicle. Further, Appellant does not contest
the issue of probable cause on appeal. Rather, Appellant maintains that the vehicle was not
mobile in that it was parked in a private driveway with the engine turned off and the car 
locked. Further, he did not give permission to search the vehicle. Appellant asserts that
Appellant had a greater expectation of privacy because of those factors. 

 The automobile exception was initially recognized by the United States Supreme
Court in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.543 (1925), and was
primarily based on the mobility of automobiles and similar vehicles. The Court later applied
the exception to vehicles that were not immediately mobile based upon what it viewed as a
lower expectation of privacy than homes or businesses due to "pervasive schemes of
regulation[s]" under which such vehicles operate. California v. Carney, 471 U.S. 392, 105
S.Ct. 2066, 85 L.Ed. 406, 53 USLW 4521, U.S. Cal., May 13, 1985. In the instant case, the
vehicle was stopped and locked in a driveway and the police had effective custody of it. 
However, the Carney holding supports a conclusion that the automobile exception was
applicable even if the vehicle was not immediately mobile.
 The fact that a vehicle may be under the control of the police does not preclude the
applicability of the automobile exception. In State v. Guzman, 959 S.W.2d 631 (Tex. Crim.
App. 1998), the Court of Criminal Appeals, following the holding in Texas v. White, 423
U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975), held that police control over a vehicle at the
time of a search does not preclude application of the automobile exception. Guzman, 959
S.W.2d at 634. Accordingly, we find that the court did not err in denying Appellant's motion
to suppress the evidence. Issue No. One is overruled.

 In Issue No. Two, Appellant contends that the court erred in allowing evidence of an
extraneous offense. Specifically, Appellant asserts that the court erred in allowing into
evidence the fact of Appellant's prior involvement in the drive-by shooting in Odessa, Texas. 
 Admission of extraneous offense evidence is generally within the trial court's
discretion. Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990); Barron v.
State, 43 S.W.3d 719, 721 (Tex. App.--El Paso 2001, no pet.). An abuse of discretion
standard is applied to decisions under both Texas Rules of Evidence 404(b) and 403. (1)
Montgomery, 810 S.W.2d at 391; Barron, 43 S.W.3d at 721. If the trial court's decision is
within the "zone of reasonable disagreement," the decision will be upheld. Barron, 43
S.W.3d at 721. While evidence of extraneous crimes is normally inadmissible, it can be
admissible if it meets the following two-prong test: (1) the offense is relevant to a material
issue in the case, other than the defendant's character; and (2) the probative value of the
evidence is not substantially outweighed by the danger of unfair prejudice. Prieto v. State,
879 S.W.2d 295, 297 (Tex. App.--Houston [14th Dist.] 1994, pet. ref'd). The material issues
in each case are determined by the respective theories proffered by the State and the defense.
See Bush v. State, 958 S.W.2d 503, 505 (Tex. App.--Fort Worth 1997, no pet.). For example,
evidence of extraneous crimes may be admissible to show motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid.
404(b). If an objection is made to extraneous offense evidence, the proponent of the
evidence must then persuade the trial court that the evidence has relevance apart from
character conformity: that it tends to establish some elemental fact, such as identity or intent;
that it tends to establish some evidentiary fact, such as motive, opportunity, or preparation
leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing the
absence of mistake or accident. Id. 

 Appellant contends that the circumstances in the two cases were substantially
different. First, Appellant was with different people in each occasion. Second, a rifle was
used in the extraneous drive-by shooting, and a handgun was used in the present case. Third,
there had been an altercation between the parties in the extraneous offense, and the present
shooting was apparently random. Lastly, in the extraneous shooting, Appellant turned
himself in and confessed to the shooting. 

 It is true that evidence admitted for the purpose of proving identity must demonstrate
a much higher degree of similarity to the charged offense than extraneous acts offered for
other purposes such as intent. Bishop v. State, 869 S.W.2d 342, 346 (Tex. Crim. App. 1993). 
However, in the instant case, the extraneous offense was not offered to prove identity. 
Rather, in the present case, the extraneous offense was proffered and admitted to show intent,
motive, and gang membership. 

 We note that Appellant through his attorney's arguments took the posture that he was
not involved in the actual shooting. During opening argument, Appellant's counsel stated
that there was no combination or conspiracy involved, and the shooting was an impulsive act
committed by two other occupants in the car. During closing argument, counsel urged that
scenario to the jury. Further, he argued that Appellant was not a party to the offense as
Appellant was merely present. In this case, the State met the first prong of the above-mentioned test in that the extraneous offense was not offered as character evidence but to
prove intent, motive and criminal gang membership. Regarding intent, the evidence tended
to rebut Appellant's defensive posture that he did not have the intent to engage in the
shooting. See Johnson v. State, 6 S.W.3d 709, 712 (Tex. App.--Houston [1st Dist.] 1999, pet.
ref'd). 


 Once it has been established that the offense is relevant to a material issue in the case,
other than the defendant's character, the reviewing court must perform a Rule 403 balancing
test to determine if the evidence's probative value is outweighed by its prejudicial effect. In
Taylor v. State, 920 S.W.2d 319 (Tex. Crim. App. 1996), the Court of Criminal Appeals
established a four-prong test for a Rule 403 balancing test: (1) whether the ultimate issue was
seriously contested by the opponent of the evidence; (2) whether the State had other
convincing evidence to establish the ultimate issue to which the disputed evidence was
relevant; (3) the compelling nature, or lack thereof, of the evidence; and (4) the likelihood
that the evidence was of such a nature as to impair the efficacy of a limiting instruction. Id.
at 322.

 In this case, regarding the first factor, it was Appellant's defensive posture that the
shooting was the impulsive act of other individuals. As such, it was seriously contested. An
analysis of the second and third factors reveals that while there was evidence of Appellant's
involvement in the primary offense, the extraneous offense compellingly demonstrates his
intentional involvement in the primary offense as opposed to the act being an impulsive act
of others. As to the fourth factor, there is nothing in the record to indicate that the jury was
unable to follow the limiting instruction. Accordingly, the court did not abuse its discretion
in allowing the extraneous offense into evidence. 

 Furthermore, we note that Appellant was charged with the offense of engaging in
organized criminal activity and that he committed the offense as a member of a criminal
street gang. Accordingly, such membership was an element that the State had to prove. In
this case, Officer Medrano testified that drive-by shootings are usually associated with gang
activity. Kim Ogg testified that gangs often engage in random acts of violence, and that
drive-by shootings are consistent with gang activity. Further, an individuals participation in
drive-by shootings on more than one occasion would make it more likely that an individual
was a gang member. A criminal street gang is defined as "three or more persons having a
common identifying sign or symbol or an identifiable leadership who continuously or
regularly associate in the commission of criminal activities." Tex. Pen. Code Ann. § 71.01
(d) (Vernon 2003). Therefore, evidence that Appellant was a member of a group that
regularly engaged in criminal activities was relevant. See Tex. R. Evid. 401; Nguyen v. 
State, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). Moreover the evidence was admissible
under rule 404(b) of the Texas Rules of Evidence. As stated, under that rule, evidence of
other crimes, wrongs, or acts is not admissible to prove the character of a person to show he
acted in conformity therewith, but it may be admissible for "other purposes," such as proof
of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake
or accident. Tex. R. Evid. 404(b). This evidence was admissible for the "other purpose" of
fulfilling the State's burden of proof on the criminal activities of a criminal street gang. See
Roy v. State, 997 S.W.2d 863, 867 (Tex. App.--Fort Worth 1999, pet. ref'd). 

 Finally, the probative value of the evidence was not substantially outweighed by the
danger of unfair prejudice. The jury was given a limiting instruction and the complained-of
evidence implicated the State's burden of proof on an element of the offenses. We conclude
its probative value was not substantially outweighed by the danger of unfair prejudice. See
Tex. R. Evid. 403. Appellant's Issue No. Two is overruled.

 Having overruled each of Appellant's issues on review, we affirm the judgment of the
trial court.

July 18, 2003


 RICHARD BARAJAS, Chief Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.


(Do Not Publish)
1. Rule 404(b) provides: 


 Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in
order to show action in conformity therewith. It may, however, be admissible for other purposes,
such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident, provided that upon timely request by the accused in a criminal case,
reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such
evidence other than that arising in the same transaction.


 Rule 403 provides:


 Although relevant, evidence may be excluded if its probative value is substantially outweighed by
the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations
of undue delay, or needless presentation of cumulative evidence.