**Johnny Kevin BUSH, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–97–073–CR.**

Court of Appeals of Texas,
Fort Worth.

Dec. 18, 1997.

John M. Hall, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles M. Mallin, Assistant Dist. Atty. and Chief of Appellate Section, C. James Gibson, Lee Wyatt, Assistant, Fort Worth, for State.

Before CAYCE, C.J., and LIVINGSTON and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

A jury convicted Johnny Bush of murder and assessed punishment at 99 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. He presents a sole point on appeal. Appellant asserts that the trial court erred by allowing evidence of several extraneous offenses. We affirm.

### Background

Appellant and his wife, Amy, were preparing to take their children, A.B., age two-and-a-half, and M.B., 19 months, with them to the shop where Appellant worked. Appellant was holding M.B., who was crying, and giving her a drink of his soda. Amy took A.B. to the couple's car, put her in the car seat, and then got in and started the car. Through the window of the house, Amy noticed Appellant indicating that M.B.'s diaper needed changing. She got A.B. out of the car and went to the door. Appellant and M.B. had left the room when Amy reached the door. They returned a few minutes later, and Appellant laid M.B. down on the floor to change the diaper.

Amy had turned around and was looking outside when she heard M.B. gasp. Turning, she saw Appellant blowing on M.B.'s stomach, apparently playing with the baby. However, M.B. began to choke and throw up, and Amy ran over to find her eyes rolled back into her head. Amy took M.B. from Appellant and attempted to open her mouth. Unable to do so, she called 911. Appellant took M.B. into the kitchen and began throwing water in her face as she continued to choke. Afraid he would drown her, Amy told Appellant to stop, and took M.B. from him. She then sat on the floor, put M.B. face down over one arm, and, according to instructions

from the 911 operator, began to beat on M.B.'s back. A.B. was upset by the unfolding events and pulled on Amy's arm, causing Amy to drop the baby on its head. Amy immediately picked up the baby and started again. Then, M.B. jerked, again falling out of Amy's arms.

Shortly thereafter, the paramedics arrived and attempted to resuscitate M.B. Amy and M.B. rode in the ambulance to the hospital, and Appellant arrived sometime later. Amy was later informed that M.B. had died.

A.B. testified that she saw Appellant "banging" M.B.'s head on the floor "sort of hard." She also stated that Amy "just said stop," but Appellant did not stop. The next thing that A.B. remembered was the ambulance arriving.

A pathologist testified that M.B. had multiple contusions of varying age all over her body and that she was malnourished when she arrived for the autopsy. He also testified that M.B. had a linear fracture extending from the base of her skull into the hole in the skull where the spinal cord attaches. He explained that this area of the skull is recessed and would not fracture as a result of an ordinary fall. The fracture was consistent with the rear base of M.B.'s head being struck against a hard or firm surface. The autopsy also revealed swelling or increased water in the brain, associated with either blunt force trauma or smothering. Because of injuries, lacerations, and small bruises around the mouth area, the pathologist believed M.B. might have been smothered as well.

Amy testified to several specific occasions where she claimed that she had not been present and had returned to find M.B. injured in various ways. In each instance, she testified that Appellant gave her explanations for the injuries such as ordinary falls and that other children, including A.B., had purposely and accidentally injured M.B.

### Extraneous Offenses

■ Appellant asserts by his sole point that the trial court erred by admitting, under article 38.36, evidence of various extraneous offenses he allegedly committed against M.B.

He contends that admission of the evidence under article 38.36 of the Code of Criminal Procedure [1] violates the prohibition of rule 404(b).[2] The State responds that the offenses were admissible under both the statute and the rule. We hold that the trial court did not abuse its discretion by allowing the evidence.

After Appellant timely objected to the evidence on the grounds of 404(b), 403, and article 38.36, the trial court allowed the evidence, stating that it was admissible to show the relationship between the defendant and the victim and that it was not limited to showing state of mind. Article 38.36 states in part:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX.CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon Supp.1998). However, Appellant points out that this statute "in no way broadens or otherwise affects the rules of evidence which apply, or the *way* in which they apply in any given homicide case." *Fielder v. State,* 756 S.W.2d 309, 318 (Tex.Crim.App.1988).

Rule 404(b) states the general proposition that extraneous offenses are not admissible to show character conformity. TEX.R.CRIM. EVID. 404(b). The rule also lists some reasons other than character which are proper bases for admission of extraneous offenses, but the list is "neither mutually exclusive nor collectively exhaustive." *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App. 1990) (op. on reh'g). A party may persuade the court that an extraneous offense is relevant to a logical inference not anticipated by the rulemakers. *See id.*

Appellant argues that article 38.36 expands the admissibility of extraneous acts in violation of rule 404(b). We disagree. Article 38.36 merely codifies the age-old *res gestae,* or same transaction contextual evidence, exception and adds the catch-all phrases "relationship between the defendant and the deceased" and "state of mind of the defendant at the time of the offense." These two phrases necessarily encompass intent, opportunity, motive, plan, scheme, identity, absence of mistake or accident and knowledge, as well as all other logical inferences which may arise from the previous dealings between the victim and the defendant. Therefore, we hold that article 38.36 does not expand rule 404(b) and, thus, does not offend notions of due process.

Admissibility of extraneous offenses is determined by a two-pronged test under both the rules of evidence and article 38.36. First, the extraneous offense must be relevant to a material issue in the case other than the defendant's character; second, its probative value must outweigh its inflammatory or prejudicial effect. *See Sattiewhite v. State,* 786 S.W.2d 271, 284 (Tex.Crim.App. 1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 226, 112 L.Ed.2d 181 (1990). The material issues in each case are determined by the respective theories proffered by the State and the defense. *See Fielder,* 756 S.W.2d at 318. We review the trial court's determination to admit or exclude the evidence for an abuse of discretion. *See Montgomery,* 810 S.W.2d at 391. We will not intercede if the trial court's ruling is within the zone of reasonable disagreement. *See id.*

### Application

In this case, the extraneous offenses were other instances of violence toward M.B., allegedly committed by Appellant. Appellant does not contend that they were not sufficiently connected to him, but merely that

---

1. Article 38.36 codified section 19.06 of the Penal Code without substantial change. Act of May 24, 1973, 63 rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913, *amended by* Act of May 28, 1973, 63 rd Leg., R.S., ch. 426, § 1, 1973 Tex. Gen. Laws 1122, 1124, *amended by* Act of April 17, 1991, 72 nd Leg., R.S., ch. 48, § 1, 1991 Tex. Gen. Laws 474, 475, *deleted by* Act of May 29, 1993, 73 rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614 (current version at TEX CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon Supp. 1998)).

2. TEX.R.CRIM. EVID. 404(b).

**506**

they were inadmissible as extraneous offenses. However, prior instances of violence and threats between a defendant and a victim have been held admissible. *See, e.g., Sattiewhite,* 786 S.W.2d at 285. The trial court found that the prior offenses went to show the relationship between Appellant and M.B. That relationship necessarily implicates many of the exceptions listed in rule 404(b). Thus, we hold that the trial court did not abuse its discretion by admitting the testimony.

### Direct Evidence

Appellant asserts alternatively that the extraneous offenses were inadmissible because there was direct evidence of the murder. He cites us to several cases decided before the rules of criminal evidence were adopted in 1986. Since the adoption of the rules, however, the availability of alternative evidence has been treated as a factor the trial court must weigh in determining the admissibility of extraneous offenses. *See Johnson v. State,* 932 S.W.2d 296, 303–04 (Tex.App.—Austin 1996, pet. ref'd). As we have stated, the weighing of those factors is a matter committed to the trial court's discretion, and we have already found that there was no abuse of discretion.

Appellant cites us to two recent decisions out of this Court as well. First, he cites *Williams* for the proposition that possession of narcotics with the intent to distribute may be inferred from the acts of the accused. *Williams v. State,* 936 S.W.2d 399, 406 (Tex. App.—Fort Worth 1996, pet. ref'd). *Williams* is inapposite to this case. Introduction of extraneous offenses was not in issue and the holding related to sufficiency of the evidence. Second, in *Darby,* this court stated that when intent cannot be inferred from the act itself, extraneous acts are deemed more probative than prejudicial and therefore admissible. *Darby v. State,* 922 S.W.2d 614, 621 (Tex.App.—Fort Worth 1996, pet. ref'd). This holding imposes a predetermined balancing test in that limited circumstance, but does not foreclose the ability of the trial court to allow extraneous offenses according to the rules of evidence and procedure. Appellant's alternative argument also fails. We overrule point one.

### Conclusion

We overrule Appellant's sole point and affirm the trial court's judgment.