Vernon Edward GIPSON, Jr., Appellant.

v.

The STATE of Texas, Appellee.

No. 10–00–202–CR.

Court of Appeals of Texas, Waco.

June 26, 2002.

Steve A. Keathley, Keathley & Keathley Corsicana, for Appellant.

Robert W. Gage, Freestone County Attorney, Fairfield, for Appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Vernon Gipson of murder and sentenced him to 99 years' imprisonment. In five points of error, Gipson argues: 1) the trial court abused its discretion by failing to grant his challenges for cause; 2) the trial court erred in failing to suppress his confession; 3) the trial court erred in failing to suppress evidence procured during a warrantless search of his home; 4) the trial court erred in admitting evidence of extraneous offenses; and 5) the trial court violated his due process rights by shifting the burden of proof on the lesser included charge of manslaughter.

### Challenging Jurors for Cause

■ In point one, Gipson contends that the trial court erred in failing to excuse jurors for cause. Specifically, he contends that jurors challenged for bias were nonetheless empaneled on the jury. The State contends that the complaint was not preserved and, in the alternative, no harm has been shown.

■ A juror may be challenged for cause if he or she demonstrates a bias or prejudice against the defendant or any facet of the law upon which the defendant is entitled to rely. TEX.CODE CRIM. PROC. ANN. 35.16(c)(2) (Vernon Supp.2002); *see also Mooney v. State,* 817 S.W.2d 693, 700 (Tex.Crim.App.1991). A trial court's decision to deny a defendant's challenge for cause should not be overturned unless, in light of the entire voir dire examination of the prospective juror, bias or prejudice is established as a matter of law. *See Burks v. State,* 876 S.W.2d 877, 893 (Tex.Crim. App.1994). We give considerable deference to the trial court's ruling because the court is in the best position to evaluate a venireman's responses and demeanor. *See King v. State,* 29 S.W.3d 556, 568 (Tex.Crim. App.2000); *Colburn v. State,* 966 S.W.2d 511, 517 (Tex.Crim.App.1998). Particular deference is given when the potential juror's answers are vacillating, unclear or contradictory. *Id.* The question of whether a challenge for cause was wrongly denied is subject to an abuse of discretion standard. *Id.*

The record shows that Gipson's counsel asked the venire if they could remain fair and impartial regardless of whether the State introduced graphic photos of the victim. Several prospective jurors responded to this question, including jurors Spence,

Bagley, and Roarke. In response, Roarke stated that this kind of evidence "might" cause her to be partial. Juror Bagley stated that the photos "could" cause her to become biased. Finally, Spence stated, "I'm not sure I could go on with the trial and be fair." Gipson's counsel attempted no follow-up questions to elicit more definitive answers from these jurors. The State did not attempt to rehabilitate the jurors. The court denied Gipson's challenges for cause against all three jurors, and they were empaneled on the jury.

Assuming without deciding that Gipson preserved his complaint for review, we find the trial court properly denied his challenges for cause. The jurors in this case used uncertain phrases such as "I'm not sure," "might," and "could" when describing whether they would become partial or biased in light of graphic photographic evidence. The indefinite responses by the three jurors in this case are similar to those at issue in *Moore v. State*. *See* 999 S.W.2d 385, 407 (Tex.Crim.App.1999). In *Moore*, defense counsel challenged a potential juror for cause based on his or her response that "all capital murder[er]s would be—could be—should be committed to the death penalty." *Id.* The court held that an ambiguous or uncertain statement by a venireman does not unequivocally establish an individual's inability to follow the law. *Id.* In the present case, no one unequivocally stated that the graphic photos would cause them to be biased against the defendant. Nor do we find that these responses established a *clear* bias towards the defendant or inability to follow the law. *See King*, 29 S.W.3d at 568 (deference given to trial court regarding contradicting, unclear, or vacillating responses). Further, we find this case distinguishable from *Hernandez v. State*, where the prospective juror offered a *definitive* belief that a police officer would not tell a lie in any case and thus was biased as a matter

of law because she was incapable of impartially judging the credibility of the evidence. *See* 563 S.W.2d 947, 950 (Tex. Crim.App.1978).

The record before us fails to establish a bias as a matter of law. *See Smith v. State*, 907 S.W.2d 522, 531 (Tex.Crim.App.1995); *Burks*, 876 S.W.2d at 893. Because the responses were uncertain, it was within the trial court's discretion to overrule the challenges for cause of each of the three jurors. *See King*, 29 S.W.3d at 568. Accordingly, point one is overruled.

### Written Statement

■ In point two, Gipson asserts that his written statement should *not* have been admitted because it was the product of police coercion.

■ When a defendant presents evidence raising a voluntariness question, the prosecution must controvert that evidence and prove voluntariness by a preponderance of the evidence. *See State v. Terrazas*, 4 S.W.3d 720, 725 (Tex.Crim.App. 1999) (citing *Muniz v. State*, 851 S.W.2d 238, 252 (Tex.Crim.App.1993)). However, the prosecution is not put to this burden unless the defendant raises the issue. *Id.* Further, when the case presents a controverted issue, the trial court acts as the fact-finder, assessing the credibility of the witnesses and the weight to be given to their testimony. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *Muniz*, 851 S.W.2d at 252. If the trial court's resolution of a controverted issue is supported by the record, it should not be disturbed. *See Muniz*, 851 S.W.2d at 252.

At the hearing on the motion to suppress his statement, Gipson testified that an officer told him "There are no promises, but that [Gipson] would be doing [himself] a favor" by giving a statement to the police. Gipson then signed a written state-

ment indicating his involvement in the victim's death.[1] At the hearing Captain Whitaker and Officer Perez, both present at the time of Gipson's statement, controverted Gipson's testimony and denied that he was ever told that he'd be "doing [himself] a favor" by giving a statement. The trial court denied suppression of the statement. Because the trial court's resolution of the controverted issue is supported by the record, we will not disturb the finding. *Id.*

Accordingly, point two is overruled.

### Fourth Amendment Search

In point three, Gipson argues that the trial court erred in admitting evidence procured during a warrantless search of his home. The State argues that the trial court's suppression of the evidence was proper under 1) the emergency exception to the warrant requirement; or 2) actual or apparent authority to consent to the search.

The purpose of the Fourth Amendment to the United States Constitution is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials. *See Berger v. New York*, 388 U.S. 41, 53, 87 S.Ct. 1873, 1880–81, 18 L.Ed.2d 1040 (1967); *Kolb v. State*, 532 S.W.2d 87, 89 (Tex.Crim.App.1976). Warrantless searches and seizures inside a home are presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). This rule is subject to only a few specifically established exceptions. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Kolb*, 532 S.W.2d at 89.

*Emergency Doctrine*

The "emergency doctrine" (also known as the "exigent circumstances doctrine") has been recognized as an exception in very limited situations where an immediate search without a warrant is reasonable because a risk of injury or death would likely be magnified if the search was delayed due to the time involved in obtaining a warrant. *See Brimage v. State*, 918 S.W.2d 466, 500–01; *see also Bray v. State*, 597 S.W.2d 763, 764 (Tex.Crim.App.1980). In *Mincey v. Arizona*, the Supreme Court held that numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. *See* 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978). Similarly, "when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises." *Id.* Further, "the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *Id.*, 437 U.S. at 393, 98 S.Ct. at 2413.

The emergency doctrine has been construed to justify entry into a residence to try to locate an individual who has been reported as missing. *See Brimage*, 918 S.W.2d at 501 (citations omitted). We use an objective standard of reasonableness in determining whether a warrantless search is justified under the emergency doctrine. *See Bray*, 597 S.W.2d at 765. This objective standard of reasonableness used in evaluating police conduct takes into account the facts and circumstances known to the police at the time of the warrantless

---

**1.** Vernon Gipson contended in his signed statement that he was attacked by the victim and she was accidentally stabbed as he attempted to take a knife from her.

search. *See Brimage,* 918 S.W.2d at 501. In the instant case, the police had the following information at the time they entered the house:

- The victim's 9 year-old daughter was locked out of the house after school on March 29, 2000. The victim had contacted no one to supervise the child. The child was forced to stay at a neighbor's overnight.

- The victim's mother called the victim's home on the afternoon of March 29 and early in the morning on March 30. Initially, the phone rang and no one answered, but then the line became busy. She then called the police in fear for her daughter's safety and told them to enter the house if necessary.

- Deputy Isaac Durham stated at the suppression hearing that he had responded to a domestic violence call on April 30, 1999. The victim complained that Gipson had assaulted her. She had visible marks and bruises on her body.

- The police responded to another domestic violence call at the home two weeks before the search. Vernon Gipson was arrested during this incident.

- Vernon Gipson's present whereabouts were unknown.

- Captain Whitaker, who authorized the warrantless search, was aware of the prior domestic violence incidents and Gipson's arrest for domestic violence two weeks prior to the search. He also stated at the hearing that the police dispatcher informed him that the victim's phone line went from being open to busy the previous day, indicating someone had been inside the home. Whitaker took four other officers along to enter the home because of Gipson's violent history. Whitaker testified that he did not get a warrant because, based on the circumstances and facts known to him, he was concerned that the victim was injured inside the home.

 "At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight attributable to those witnesses. The judge may believe or disbelieve all or any part of a witness's testimony. His findings should not be disturbed absent a clear abuse of discretion." *Alvarado v. State,* 853 S.W.2d 17, 23 (Tex.Crim.App.1993). We review a trial court's refusal to admit evidence for abuse of discretion, which means we review for whether the court's ruling was within the zone of reasonable disagreement. *See Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990).

Whitaker articulated several reasons for his authorization of the warrantless search: 1) the victim was missing for an entire day and left no supervision for her minor child; 2) relatives reported calling the home with no response and no one answered the door; 3) the phone line changed from open to busy; 4) past domestic violence and arrests occurred at the Gipson home just two weeks prior to the search; 5) Gipson had a history of violence toward the victim; and 6) he was concerned that the victim was injured inside the home.

All of the foregoing facts led the police to "reasonably believe that a person within [the home] is in immediate need of aid." *Mincey,* 437 U.S. at 393, 98 S.Ct. at 2413. The past experience of the officers responding to domestic violence at the Gipson residence is relevant to evaluating the potential for an emergency situation. *See Rangel v. State,* 972 S.W.2d 827, 831–32 (Tex.App.-Corpus Christi 1998, pet. ref'd) (taking into account the facts and circumstances, past experience of officers specializing in gang activity was relevant to evaluating the potential for an emergency situation and justified the warrantless search under the emergency exception).

The fact that the police had no actual evidence of injuries suffered by the victim does not alter the reasonableness of their concern that injured persons could be present inside the house. *Id.* Moreover, the emergency doctrine has been construed to justify entry into a residence to try to locate an individual who has been reported as missing.[2] *See Brimage*, 918 S.W.2d at 501. Taking into account all of the above information, a reasonable police officer could conclude that an emergency existed and that there was a reasonable possibility that the victim was injured or in need of assistance. *Id.* at 502.

We find no abuse of discretion in the trial court's determination that the search was justified by exigent circumstances. The trial court's decision was within the "zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391.

■■■ Once the police entered the home, they immediately saw blood streaks in plain view leading to the bathroom where the victim's body was located.[3] Evidence discovered prior to location of the victim's body was properly seized under the emergency doctrine. *See Brimage*, 918 S.W.2d at 502. Furthermore, the police, upon discovering a homicide scene, may make a warrantless search of the premises to see if there are other victims or if the killer is somewhere on the premises. *Id.* (citing *Mincey*, 437 U.S. at 392, 98 S.Ct. at 2413). We conclude that the victim's body and the evidence seized from the residence during the search for the victim, Gipson, or potential additional victims was lawfully seized under the emergency exception and plain

view doctrines, and thus, the trial court did not abuse its discretion in ruling the evidence was admissible at trial. *Id.*

Accordingly, point three is overruled.

## Extraneous Offenses

■■■ In Gipson's fourth point, he argues that the trial court erred in allowing evidence of his extraneous conduct to be presented to the jury because the probative value was outweighed by the danger of unfair prejudice. Further, he contends that the acts were not proven beyond a reasonable doubt.

■■■ The general rule is that an accused may not be tried for being a criminal generally. *See Bradshaw v. State*, 65 S.W.3d 232, 236 (Tex.App.-Waco 2001, no pet.) (citing *Couret v. State*, 792 S.W.2d 106, 107 (Tex.Crim.App.1990)). Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant and that he acted in conformity with that character. *See* Tex.R. Evid. 404(b). Article 38.36 of the Code of Criminal Procedure provides, however, that in all prosecutions for murder the State may offer evidence of the defendant's previous relationship with the victim, together with all facts and circumstances going to show the condition of the mind of the accused at the time of the killing. *See* Tex.Code Crim. Proc. Ann. art. 38.36(a) (Vernon Supp. 2002).

■■■ The Court of Criminal Appeals has applied Rule 404(b) and article 38.36(a) congruously, holding that application of ar-

---

**2.** Although the facts in each emergency doctrine case are unique, cases in other states involving warrantless entries to search for missing persons based on facts comparable to the present case have qualified for the emergency exception. *See People v. Wharton*, 53 Cal.3d 522, 577, 280 Cal.Rptr. 631, 809 P.2d 290 (1991); *Chaney v. State*, 612 P.2d 269,

277 (Okla.Crim.App.1980); *People v. Mitchell*, 39 N.Y.2d 173, 178, 347 N.E.2d 607, 610 (1976).

**3.** Following the initial search of the home, the police secured a warrant to further investigate the crime scene.

ticle 38.36 does not abrogate the trial court's duty to ensure that the State's evidence is not offered for the sole purpose of showing the defendant acted in conformity with prior bad acts. *See Smith v. State*, 5 S.W.3d 673, 679 (Tex.Crim.App. 1999); *see also Ex Parte Varelas*, 45 S.W.3d 627, 632 n. 5 (Tex.Crim.App.2001). Admissibility of extraneous offenses is determined by a two-pronged test under both the rules of evidence and article 38.36. *See Smith*, 5 S.W.3d at 679; *Bush v. State*, 958 S.W.2d 503, 505 (Tex.App.-Fort Worth 1997, no pet.). The extraneous offense: 1) must be relevant to a material issue in the case other than the defendant's character; and 2) its probative value must outweigh its inflammatory effect or the danger of unfair prejudice. *Id.* The material issues in each case are determined by the respective theories proffered by the State and the defense. *See Bush*, 958 S.W.2d at 505.

██ Appellate courts measure the trial court's rulings concerning the admissibility of evidence of other crimes, wrongs, or acts under an abuse of discretion standard. *See Montgomery*, at 387, 391. As long as the trial court's ruling was at least within the zone of reasonable disagreement, the appellate court will not interfere with the ruling. *Id.*

The State offered various extraneous acts to show Gipson's relationship to the victim, motive and intent (state of mind of defendant), and to rebut the defensive theories of self-defense and accident. The trial court instructed the jury accordingly. The court then held a hearing outside the presence of the jury and heard the following evidence regarding prior acts of violence:

- Deputy Durham testified about a "911" domestic violence call concerning a fight between Gipson and the victim

- Veerita Grant testified to at least three instances of Gipson's violence towards the victim and her child

- Camie Grant testified that Gipson pushed the victim down and kicked her on one occasion.

The trial court determined that these extraneous acts were probative and not substantially outweighed by the danger of unfair prejudice.

Both the instant offense and the extraneous acts were substantially similar because they involved Gipson's violence towards the victim. *See Johnson v. State*, 932 S.W.2d 296, 302 (Tex.App.-Austin 1996, pet. ref'd) (extraneous offense of shooting at individual in automobile was substantially similar to charged offense of capital murder that arose from shooting at individual who was in automobile). Evidence of the relationship between Gipson and the victim is relevant and was properly admitted. *See Bisby v. State*, 907 S.W.2d 949, 957 (Tex.App.-Fort Worth 1995, pet. ref'd).

We also find that evidence of these prior altercations and violence between Gipson and the victim was admissible to show Gipson's motive and intent to commit the subsequent acts of violence against the victim, and was thus relevant to a material issue. *See Green v. State*, 831 S.W.2d 89, 94 (Tex.App.-Corpus Christi 1992, no pet.) (evidence of prior altercation between defendant and victim was admissible to show motive and intent to commit the subsequent assaults). The court could have reasonably determined that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See* Tex.R. Evid. 403. Accordingly, the trial court did not abuse its discretion in admitting extraneous acts relevant to prove motive and intent or relationship of the parties. Point four is overruled.

### Shifting the Burden of Proof

Gipson contends in point five that section 19.02(d) of the Texas Penal Code unconstitutionally shifts the burden of proof to Gipson because he must prove the existence of "sudden passion" at the punishment phase of trial.

 Section 19.02(d) does not lessen the State's burden to prove beyond a reasonable doubt all elements of the statutorily-defined offense of murder at the guilt-innocence phase of the trial. *See Jones v. State*, 955 S.W.2d 438, 440 (Tex.App.-Fort Worth 1997, pet. ref'd). After those elements have been established at the guilt-innocence phase and an accused has been convicted of murder, section 19.02(d) allows the accused to prove the mitigating defense of sudden passion by a preponderance of the evidence at the punishment phase. *Id.* We agree with the numerous Texas appellate courts holding that the legislature's enactment of this section did not unconstitutionally shift the burden of proof in murder trials from the State to the accused, nor did the enactment violate a defendant's right to due process of the law. *Id.; Vasquez v. State*, 2 S.W.3d 355, 361 (Tex.App.-San Antonio 1999, no pet.); *Green v. State*, 971 S.W.2d 639, 643 (Tex. App.-Houston [14th Dist.] 1998, pet. ref'd); *Fleming v. State*, 956 S.W.2d 620, 622 (Tex.App.-Eastland 1997, pet. ref'd); *Robinson v. State*, 945 S.W.2d 336, 342 (Tex. App.-Austin 1997, pet. ref'd). Accordingly, point five is overruled.

We affirm the judgment.