Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
MELVIN LOUIS,                                             )                  No. 08-04-00130-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  205th District Court
)
THE STATE OF TEXAS,                                   )                  of El Paso County, Texas
)
                                    Appellee.                          )                  (TC# 20020D06261) 

O P I N I O N

            Melvin Louis appeals his murder conviction. A jury found Appellant guilty and assessed his
punishment at life imprisonment. The trial court included in the judgment an affirmative deadly
weapon finding. We affirm.
FACTUAL SUMMARY
            In 1993, Appellant and Nalini Hanooman-Singh (also known as Nalina Singh or Sasha
Singh) met in Korea while they were in the United States Army. They married in 1996 and decided
to have a child after moving to Germany. Singh gave birth to a daughter, Briana, in 1998. When
Singh was transferred to Fort Bliss, the family moved to El Paso in January 2001.


 On
September 25, 2002, Singh filed an application for a protective order based on evidence that
Appellant had assaulted her on August 14, September 1, and September 23 of 2002 and had caused
injuries to her. The temporary ex parte protective order issued on September 27, 2002 prohibited
Appellant from going within 200 yards of Briana’s daycare center or removing Briana from Singh’s
possession.


 Singh hired an attorney and filed for divorce in early October of 2002. Appellant had
not been served with the protective order, but he was aware of its existence. Appellant resigned his
job and moved to Atlanta, Georgia to live with his sister, but he returned to El Paso on a few
occasions. He purchased a handgun on October 12. 
            Late one evening in mid-October, approximately two weeks after Singh filed for divorce,
Singh called Sergeant Eric David Knutzen,


 and told him that Appellant was knocking on all of her
doors and windows and asking her to let him in the house. Sgt. Knutzen went to Singh’s home but
when he arrived, Appellant was no longer there. When Singh opened the door for Sgt. Knutzen, she
was talking on the telephone to Appellant. Singh appeared upset and scared, so Sgt. Knutzen
recommended that she stay with a friend that evening. While Singh packed, Appellant called several
times. Sgt. Knutzen listened to one of the calls and heard Appellant tell Singh that he did not want
the divorce. He also threatened to kill himself. Sgt. Knutzen followed Singh while she drove to a
friend’s home. 
            Appellant returned to El Paso on October 29 and purchased ammunition for the handgun. 
The following day at approximately 8 a.m., two witnesses saw Appellant sitting in a parked car near
Little Red Apple Daycare. Frederick Nelson, an employee of Mountain Park Automotive, asked
Appellant if he needed help, and Appellant replied that he thought it was a convenience store. 
Nelson told Appellant that the convenience store was next door but it was not open. At around
9:15 a.m., Singh arrived at Little Red Apple Daycare with Briana. Briana went into her classroom
while Singh signed her in at the front desk. Singh then asked to speak to the daycare owner, Wendell
Bellamy. Since he was not there, Singh spoke with Mrs. Bellamy in the kitchen. Appellant walked
into the daycare and Briana ran over to him. Singh returned to the front desk and asked Briana to
return to her classroom. Speaking in a low voice, Singh asked Appellant what he was doing and told
him that he was not supposed to be there. Appellant told Singh that he only wanted to talk to her. 
The daycare owner’s daughter, Veronica Palma, knew that a protective order prohibited Appellant
from being at the daycare and she telephoned the police. About the time Palma hung up the phone,
Mr. Bellamy returned. Mrs. Bellamy alerted him that Appellant was there and that they had
telephoned the police. 
            Mr. Bellamy walked over to where Appellant and Singh were talking. Singh appeared “on
the edge,” so Mr. Bellamy sat down at the desk and began a casual conversation with Appellant
about the weather and other topics in order to keep him engaged until the police arrived. 
Mr. Bellamy heard Singh refuse Appellant’s request to take Briana out for a pizza or hamburger. 
The conversation continued for about ten minutes. At one point, Appellant asked Mr. Bellamy for
a pencil and paper so that he could get Singh’s address and phone number, but Singh would not give
him that information. Mr. Bellamy did not hear Singh or Appellant raise their voices and there were
no violent movements. Just as a police car pulled into the parking lot and stopped near the door of
the daycare, Appellant looked at Mr. Bellamy and said, “I am sorry, Mr. Bellamy.” He pulled out
a handgun and shot Singh twice in the chest before turning the gun on himself. Singh died of her
injuries but Appellant survived the wound to his head. 
            Appellant testified at trial about his relationship with Singh and the events surrounding the
shooting. During the separation, Appellant sometimes picked up Briana from the daycare center in
order to visit her. On one occasion, he picked her up around noon. Singh had agreed that he could
visit with Briana during the afternoon as long as he returned her to the daycare by 6 p.m. They ate
lunch together, went to a park, and then to a toy store. As they were returning to the daycare center,
Briana became upset about her parents’ separation and said she did not want to go back to the
daycare center. After Appellant and Briana arrived at the daycare center at 5 p.m., he called Singh
to ask whether he could extend his visit. Singh “went ballistic” and told him no. Appellant argued
with Singh, telling her that because there was no custody agreement, he could take Briana. He told
her that he would return Briana later that night. Singh apparently called the police because both the
El Paso police and military police quickly arrived at the daycare. When Appellant exited the
building, the officers had their weapons drawn. They frisked Appellant and handcuffed him. Singh
arrived approximately five minutes later. After some conversation with Appellant and Singh, the
police released Appellant and did not file charges. Appellant did not return to the daycare center
until the day of the shooting. 
            Appellant flew to El Paso on October 29. He called Singh several times and finally spoke
with her on the morning of October 30. Singh told him that she was going to take Briana to daycare
that morning at about 8 o’clock but she did not tell him that he could not visit Briana there. 
Appellant took the loaded handgun to the daycare center in order to take his own life. He could
remember numerous details of the morning both prior to and after the shooting, but he did not
remember actually shooting her. 
            The jury found Appellant guilty of murder as alleged in the indictment and further found that
he used a deadly weapon in the commission of the offense. During the punishment phase, Appellant
introduced the testimony of a psychologist, Dr. Karen Gold. Based on testing completed in July of
2003, Dr. Gold concluded that Appellant was acutely ill with severe depression and she diagnosed
him with schizo-affective disorder. According to Dr. Gold, Appellant’s depression became so severe
that he was out of touch with reality to the point that he was not aware of where he was or what he
was doing. Dr. Gold could not state that Appellant had schizo-affective disorder at the time of the
shooting. 
            The State countered Dr. Gold’s testimony with that of a psychiatrist, Arthur Ramirez, M.D.,
who concluded that Appellant did not exhibit the signs of schizo-affective disorder. Dr. Ramirez
did not find evidence of a triggering event that may have caused Appellant to murder Singh in a state
of agitation or emotional upheaval. Dr. Ramirez examined Appellant and diagnosed him with a
major depressive disorder that existed at the time of the murder and thereafter. 
            The trial court refused to submit an instruction pursuant to Section 19.02(d) of the Penal
Code because there was no evidence that Appellant caused Singh’s death under the immediate
influence of sudden passion arising from an adequate cause. The jury assessed Appellant’s
punishment at life imprisonment. 
CONSTITUTIONALITY OF SECTION 19.02(D)
            In Issue One, Appellant contends that Section 19.02(d) of the Penal Code violates due
process because it places the burden on him to prove, during the punishment phase, mitigating
circumstances in order to reduce the applicable range of punishment.


 Section 19.02(d) does not
lessen the State’s burden to prove beyond a reasonable doubt all elements of the statutorily-defined
offense of murder at the guilt-innocence phase of the trial. Gipson v. State, 82 S.W.3d 715, 724
(Tex.App.--Waco 2002, no pet.); Jones v. State, 955 S.W.2d 438, 440 (Tex.App.--Fort Worth 1997,
pet. ref'd). After those elements have been established and an accused has been convicted of murder,
Section 19.02(d) allows the accused to prove the mitigating defense of sudden passion at the
punishment phase. Gipson, 82 S.W.3d at 724. Numerous intermediate appellate courts have
considered this same issue and have held that Section 19.02(d) does not unconstitutionally shift the
burden of proof in murder trials from the State to the accused, nor does it violate a defendant’s right
to due process of the law. Gipson, 82 S.W.3d at 724; Vasquez v. State, 2 S.W.3d 355, 361
(Tex.App.--San Antonio 1999, pet. ref’d); Green v. State, 971 S.W.2d 639, 643 (Tex.App.--Houston
[14th Dist.] 1998, pet. ref’d); Fleming v. State, 956 S.W.2d 620, 622 (Tex.App.--Eastland 1997, pet.
ref’d); Jones, 955 S.W.2d at 440; Robinson v. State, 945 S.W.2d 336, 342 (Tex.App.--Austin 1997,
pet. ref’d); Kreyssig v. State, 935 S.W.2d 886, 891 (Tex.App.--Texarkana 1996, pet. ref’d). Because
we agree with these decisions, we overrule Issue One.
FAILURE TO SUBMIT SUDDEN PASSION INSTRUCTION
            In Issue Two, Appellant complains that the trial court erred by failing to submit a sudden
passion instruction in the punishment charge. Pursuant to Section 19.02(d), the defendant may raise
an issue at the punishment phase as to whether he caused the death under the immediate influence
of sudden passion arising from an adequate cause. Tex.Penal Code Ann. § 19.02(d)(Vernon
2003). “Sudden passion” means passion directly caused by and arising out of provocation by the
individual killed or another acting with the person killed which passion arises at the time of the 

offense and is not solely the result of former provocation. Tex.Penal Code Ann. § 19.02(a)(2). 
The Penal Code defines “adequate cause” as cause that would commonly produce a degree of anger,
rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of
cool reflection. Tex.Penal Code Ann. § 19.02(a)(1). A sudden passion charge should be given
if there is some evidence to support it, even if that evidence is weak, impeached, contradicted, or
unbelievable. Trevino v. State, 100 S.W.3d 232, 238 (Tex.Crim.App. 2003). The question is
whether there is any evidence from which the jury could infer sudden passion arising from an
adequate cause. See Moore v. State, 969 S.W.2d 4, 11 (Tex.Crim.App. 1998). In considering
whether the issue is raised by the evidence, we will consider the evidence adduced at both the guilt-innocence and punishment phases of the trial. See Trevino, 100 S.W.3d at 238.
            Appellant asserts that the evidence showing he had been previously detained and harassed
by the police at the daycare, when combined with evidence that he saw the police arrive at the
daycare just prior to the shooting, raised the issue of sudden passion. Appellant claims that he had
a reasonable belief that he was entitled to be at the daycare since he had not been served with the
protective order, and he argues that his sudden passion arose from an adequate cause, namely, that
Singh had unjustifiably manipulated the police to have him arrested. The evidence does not support
his contentions.
            There is no evidence in the record that Appellant shot Singh in a rage because he believed
she had unjustifiably manipulated the police to arrest him. Appellant did not testify this was his state
of mind and there is no objective evidence showing that the arrival of the police produced a degree
of anger, rage, resentment, or terror in Appellant that rendered his mind incapable of cool reflection.
Cf. Trevino, 100 S.W.3d at 239 (evidence of defendant’s emotional reactions, such as the defendant
being “extremely upset,” “scared and panicked” or the defendant “freaking out” and “crying and
shaking,” raised the issue of sudden passion). By all accounts, Appellant remained calm throughout
the incident and he even apologized to Mr. Bellamy immediately prior to shooting Singh twice and
then himself. In the absence of any evidence that Appellant experienced sudden passion, the trial
court did not err by refusing to give the jury the requested instruction. Issue Two is overruled. 
Having overruled both issues raised on appeal, we affirm the judgment of the trial court.


August 16, 2005                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)