COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-409-CR

 

 

ROLANDO VASQUEZ                                                            APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Rolando Vasquez
appeals his convictions for engaging in organized criminal activity[2]
and murder.[3]  We affirm.








In the early morning hours of
August 7, 2005, appellant, a member of the Varrio Northside street gang, shot
and killed Juan Rodriguez, a member of the rival Los Homeboys gang.

Following a three-day jury
trial, appellant was found guilty of engaging in organized criminal activity
and murder.  After hearing additional
evidence and argument, the jury assessed punishment at twenty-five years= confinement for engaging in organized criminal activity, and life for
murder.[4]  The trial court sentenced appellant in
accordance with the jury=s verdict
and ordered the sentences to run concurrently.[5]

In his first and second
points, appellant contends the evidence was factually insufficient to support
the verdicts.








When determining factual
sufficiency, we review all the evidence in a neutral light, favoring neither
party.[6]  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.[7]  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.[8]








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@[9]  We cannot conclude that a
conviction is clearly wrong or manifestly unjust simply because we would have
decided differently than the jury or because we disagree with the jury=s resolution of a conflict in the evidence.[10]  We may not simply substitute our judgment for
the fact-finder=s.[11]  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@[12]  Thus, we must give due deference
to the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@[13]

When reviewing a
factual-sufficiency challenge, we must discuss the evidence appellant claims is
most important in allegedly undermining the jury=s verdict.[14]  In this case, appellant argues that the
evidence is factually insufficient to support his murder conviction because (1)
no physical evidence linked him to the crime; (2) the trial testimony of David
Mata, Jessica Ramirez, Jesus Duran, and Mark Monreal Aconflicts with each other, with their statements previously given to
the police, and with the forensic evidence produced at trial@; and (3) because Mata, Duran, and Monreal had lengthy criminal
records.








A person commits murder if he
either (1) intentionally or knowingly causes the death of an individual; or (2)
intends to cause serious bodily injury and commits an act clearly dangerous to
human life that causes the death of an individual.[15]

The jury is the sole judge of
the facts, the credibility of the witnesses and the weight to be given the
evidence.[16]  Therefore, the jury is free to believe or
disbelieve all or part of any witness=s testimony.[17]  A factual-sufficiency challenge will not
necessarily be sustained simply because the record contains conflicting
evidence upon which the fact-finder could have reached a different conclusion.[18]

The evidence showed that
appellant was a member of a Fort Worth street gang, Varrio Northside (AVNS@).  Juan Rodriguez and David Mata were members of
a rival gang, the Los Homeboys (ALHB@).  Animosity between the gangs dated back to
1993 when Mata=s older
brother, LHB-gang-member Greg Mata, murdered VNS-gang-member Noah Soto.








On the night Rodriguez was
killed, he and Mata were sitting in his car in the parking lot outside Jessica
Ramirez=s apartment.  Appellant and
Jesus Duran walked by and tried to see who was in the car.

Mata knew appellant did not
like him because his brother had killed Soto years before.  Mata asked Rodriguez to take him home.  Rodriguez told him not to worry because
Rodriguez and appellant were both members of another gang and had recently hung
out together.  Rodriguez exited the car
alone and shook hands with appellant and Duran.

The two insisted that Mata
also exit the car.  Mata did so to avoid
any trouble.  Appellant asked for Mata=s name.  When Mata said, ADavid Mata,@ appellant
lifted his shirt, drew a pistol, cocked it, put it back in his pants, and asked
if he was Greg Mata=s
brother.  Mata acknowledged that he was,
the scene became tense, and Mata believed something would happen.

Appellant demanded Ramirez=s cell phone Abefore [he
did] something stupid.@  Mata heard appellant say into the phone, AYeah, he=s here right
now, I got him here right now.@  

Rodriguez urged Mata to
leave, insisting that he could keep appellant and Duran from doing
anything.  Eventually, Mata went around
the apartment building to use the restroom and did not come back.








Realizing that Mata had gone,
appellant Asnapped,@ re-drew the pistol,  pointed it
at Rodriguez and ordered him into the car. 
Appellant instructed Duran to follow them.  Not far from the apartment-complex exit,
Duran saw appellant shoot Rodriguez.

From inside her apartment,
Ramirez heard gunshots.  She called
appellant several times, who, when he finally answered, told her that he had
shot Rodriguez.

Sometime later, appellant
talked to Mark Monreal, an original VNS member and Soto=s cousin.  Appellant told
Monreal that he had killed a friend of Greg Mata in a car to avenge Soto=s murder.  Appellant asked if
the killing would promote him in the gang.

At the house where appellant
was arrested, police found a Taurus pistol wrapped in a blue towel resting in a
tree stump.  Forensic testing linked the
pistol to projectiles and cartridge cases recovered from the site of Rodriguez=s killing.








Having reviewed all the
evidence in a neutral light, we cannot say that the evidence supporting
appellant=s murder
conviction is so weak that the verdict seems clearly wrong and manifestly
unjust or that the verdict is against the great weight and preponderance of the
evidence.[19]  Therefore, we find the evidence factually
sufficient.[20]  We overrule point one.

In point two, appellant
claims that the evidence is factually insufficient to sustain his conviction
for engaging in organized criminal activity because, even if he killed
Rodriguez, his actions Awere
performed by [himself], alone, and not as part of a common scheme,
organization, or combination[] to establish, maintain or participate as a
member of a criminal street gang.@  He argues that Aa single offense, committed by a single actor, even if given a genesis
in gang activity@ does not
constitute engaging in organized criminal activity.








A person commits the offense
of engaging in organized criminal activity if, with intent to establish,
maintain, or participate in a combination or in the profits of a combination or
as a member of a criminal street gang, he commits or conspires to commit . . .
murder.[21]  A criminal street gang is three or more
persons having a common identifying sign or symbol or an identifiable
leadership who continuously or regularly associate in the commission of
criminal activities.[22]  Under the plain language of ' 71.02(a), a person may be convicted of engaging in organized criminal
activity by individually committing murder.

Moreover, the evidence
clearly established that appellant committed the offense of engaging in
organized criminal activity.  Appellant
is a member of a criminal street gang, VNS, one of the larger gangs in Fort
Worth, with three or more members.  VNS
has a common identifying sign or symbol and identifiable leadership.  Its members regularly or continuously
associate in the commission of criminal activities, including assaults, drug
offenses, weapons violations, burglaries, and homicides.

Appellant drew a pistol from
his pants, cocked it, and returned it to his pants when he learned that Mata
shared his last name with someone who had killed a fellow gang member in the
past.  When appellant learned that Mata
was the brother of the one who had killed his fellow gang member, the scene
became tense and Mata feared that something would happen.  Appellant made a telephone call, telling
someone on the other end, AYeah, he=s here right
now, I got him here right now.@








When Mata left at the
insistence of Rodriguez, and appellant realized that Mata was not coming back,
he Asnapped,@ pulling the
gun on Rodriguez.  Appellant instructed
Duran to follow him, and appellant and Rodriguez left in Rodriguez=s car.  After traveling a short
distance, appellant shot Rodriguez.

Appellant told Monreal, a
senior gang member in VNS, that he had killed a friend of Greg Mata=s in a car to avenge the death of Monreal=s cousin, Soto, whom Greg Mata had killed years before.  Appellant asked Monreal if killing Rodriguez
meant he could get his Astripes@ in the gang, i.e., if he could move up in its hierarchy.

Mata testified that Rodriguez
was killed because he was Mata=s friend and Abecause he
got [Mata] out of there.@  Mata testified that appellant was after him,
was angry that Rodriguez had helped him, and decided to kill Rodriguez after
Mata left.

Viewing all the evidence in a
neutral light, we cannot say that the jury=s verdict seems clearly wrong and manifestly unjust, nor that it is
against the great weight and preponderance of the evidence.  Because the evidence is factually sufficient
to sustain the jury=s verdict
that appellant is guilty of engaging in organized criminal activity, we
overrule point two.[23]

In his third point, appellant
claims that the trial court erroneously admitted evidence that appellant was a
member of the prison gang Tango Blast.








Texas Code of Criminal
Procedure article 38.36(a) provides that in all prosecutions for murder, the
state or the defendant shall be permitted to offer testimony as to all relevant
facts and circumstances surrounding the killing and the previous relationship
existing between the accused and the deceased.[24]  This provision must be read in conjunction
with Rules 403 and 404(b) of the Texas Rules of Evidence.[25]  Reading the three provisions together,
prior-relationship evidence is admissible unless its probative value is
substantially outweighed by unfair prejudice, confusion of the issues,
misleading of the jury, considerations of undue delay, or needless presentation
of cumulative evidence.[26]  Further, the evidence cannot be admitted
solely to show that the accused acted in conformity with his bad character and
murdered the victim.[27]








The admissibility of evidence
is within the discretion of the trial court and will not be overturned absent
an abuse of discretion.[28]  If the trial court=s ruling was within the zone of reasonable disagreement, we must
affirm.[29]

Here, appellant=s  membership in the Tango Blast
gang was relevant to the circumstances of the murder.  Mata testified that he was apprehensive when
he saw appellant because he knew appellant did not like him because Mata=s brother had killed Soto, years before.  Rodriguez allayed Mata=s fears by explaining that appellant and he were members of Tango
Blast and that he and appellant had recently hung out together.  Rodriguez=s and appellant=s membership
in the same gang helped explain Rodriguez=s belief that he could keep appellant and Duran from doing anything
when Mata left the scene.  The evidence
was not offered solely to show that appellant murdered Rodriguez because he
acted in conformity with his bad character.








Having held the evidence to
be relevant to the circumstances of the murder, we must determine whether its
probative value was substantially outweighed by the danger of unfair prejudice.[30]  To make this determination, we must consider
the inherent probative force of the proffered item of evidence along with the
proponent=s need for
that evidence, and balance these considerations against the following four
factors that favor exclusion: 

(1) any tendency of the
evidence to suggest [a] decision on an improper basis,

(2) any tendency of the
evidence to confuse or distract the jury from the main issues,

(3) any tendency of the
evidence to be given undue weight by a jury that has not been equipped to
evaluate the probative force of the evidence, and 

(4) the likelihood that
presentation of the evidence will consume an inordinate amount of time or
merely repeat evidence already admitted.[31]








In this case, the probative
force and the State=s need to
admit evidence that Rodriguez and appellant were members of the same gang
outweigh the factors that favor exclusion. 
Although a defendant=s membership in a gang such as Tango Blast C whose membership is open only to persons who have been incarcerated C could have a tendency to influence a jury to convict on the basis of
the defendant=s
incarceration for a prior conviction, any such tendency is minimal here, where
the evidence of guilt is so compelling. 
In addition to hearing eye-witness testimony from a person who saw
appellant shooting Rodriguez, appellant=s admission to Ramirez and Monreal that he shot Rodriguez was before
the jury.  The force of this evidence was
strong enough to overcome any tendency the jury might have to convict on the
basis of his prison gang membership.  It
was also unlikely that the prison gang membership would confuse and distract
the jury, or be given undue weight given the compelling evidence of guilt.








Furthermore, the record shows
that the prison gang evidence did not consume inordinate time and was not
repetitious.  Appellant=s trial first mentioned that Tango Blast was a prison gang in her
opening statement.  Thereafter, over the
next three days of trial and 449 pages of record, the State=s evidence of appellant=s membership in the gang appears on only five pages, including one
devoted to mitigating evidence that a person could join the gang while being
held in the county jail for a misdemeanor offense.  Neither appellant=s trial counsel nor the State mentioned the membership in Tango Blast
in closing argument.

Because the factors favoring
exclusion do not substantially outweigh the probative force of the evidence and
the State=s need for
it, we hold that the trial court did not abuse its discretion in admitting
evidence of appellant's membership in Tango Blast under rule 403.  We overrule point three.

Having overruled all of appellant=s points, we affirm the judgment of the trial court.

 

PER CURIAM

 

 

PANEL: 
CAYCE, C.J.; HOLMAN and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  September 4, 2008











[1]See Tex.
R. App. P. 47.4.





[2]Tex.
Penal Code Ann. '
71.02 (Vernon Supp. 2008).





[3]Tex.
Penal Code Ann. '
19.02 (Vernon 2003).





[4]A
prior felony conviction enhanced both sentences.





[5]See Tex.
Penal Code Ann. ' 3.03(a)
(Vernon Supp. 2008).





[6]Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).





[7]Watson, 204
S.W.3d at 414B15,
417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).





[8]Watson, 204
S.W.3d at 417.





[9]Id.





[10]Id.





[11]Johnson, 23
S.W.3d at 12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).





[12]Johnson, 23
S.W.3d at 8.





[13]Id. at
9.





[14]Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).





[15]Tex.
Penal Code Ann. ' 19.02(b)(1),
(2) (Vernon 2003).





[16]Cain, 958
S.W.2d at 407; see Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon
1979).





[17]See
Jones v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998).





[18]See
Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997) cert.
denied, 535 U.S. 982 (2002).





[19]See
Johnson, 23 S.W.3d at 11.





[20]See
Watson, 204 S.W.3d at 414; Clewis v. State, 922 S.W.2d 126, 133B34
(Tex. Crim. App. 1996).





[21]Tex.
Penal Code Ann. ' 71.02(a)(1)
(Vernon Supp. 2008).





[22]Tex.
Penal Code Ann. ' 71.01(d)
(Vernon 2003).





[23]See
Watson, 204 S.W.3d at 414; Clewis, 922 S.W.2d at 133B34.





[24]Tex.
Code Crim. Proc. Ann. art. 38.36(a) (Vernon 2005).





[25]Smith
v. State, 5 S.W.3d 673, 679 (Tex. Crim. App. 1999); see
Bush v. State, 958 S.W.2d 503, 505 (Tex. App.CFort
Worth 1997, no pet.).





[26]Garcia
v. State, 201 S.W.3d 695, 703 (Tex. Crim. App. 2006), cert.
denied, 127 S. Ct. 1289 (2007).





[27]Garcia, 201
S.W.3d at 703.





[28]Moses
v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); Montgomery
v. State, 198 S.W.3d 67, 79 (Tex. App.CFort Worth 2006, pet. ref=d).





[29]Moses, 105
S.W.3d at 627; Montgomery, 198 S.W.3d at 79.





[30]Montgomery
v. State, 810 S.W.2d 372, 388B89
(Tex. Crim. App. 1990)(op. on reh=g).





[31]Gigliobianco
v. State, 210 S.W.3d 637, 641B42
(Tex. Crim. App. 2006).