

# COURT OF APPEALS

### SECOND DISTRICT OF TEXAS
### FORT WORTH

---

## NO. 2-06-409-CR

---

ROLANDO VASQUEZ                                          APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

### FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Rolando Vasquez appeals his convictions for engaging in organized criminal activity[2] and murder.[3]  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

[2] Tex. Penal Code Ann. § 71.02 (Vernon Supp. 2008).

[3] Tex. Penal Code Ann. § 19.02 (Vernon 2003).

In the early morning hours of August 7, 2005, appellant, a member of the Varrio Northside street gang, shot and killed Juan Rodriguez, a member of the rival Los Homeboys gang.

Following a three-day jury trial, appellant was found guilty of engaging in organized criminal activity and murder. After hearing additional evidence and argument, the jury assessed punishment at twenty-five years' confinement for engaging in organized criminal activity, and life for murder.[4] The trial court sentenced appellant in accordance with the jury's verdict and ordered the sentences to run concurrently.[5]

In his first and second points, appellant contends the evidence was factually insufficient to support the verdicts.

When determining factual sufficiency, we review all the evidence in a neutral light, favoring neither party.[6] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the

---

[4] A prior felony conviction enhanced both sentences.

[5] *See* Tex. Penal Code Ann. § 3.03(a) (Vernon Supp. 2008).

[6] *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

2

conviction that the fact-finder's determination is manifestly unjust.[7] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[8]

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction."[9] We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence.[10] We may not simply substitute our judgment for the fact-finder's.[11] Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often

---

[7] *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

[8] *Watson*, 204 S.W.3d at 417.

[9] *Id*.

[10] *Id*.

[11] *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."[12]  Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[13]

When reviewing a factual-sufficiency challenge, we must discuss the evidence appellant claims is most important in allegedly undermining the jury's verdict.[14]  In this case, appellant argues that the evidence is factually insufficient to support his murder conviction because (1) no physical evidence linked him to the crime; (2) the trial testimony of David Mata, Jessica Ramirez, Jesus Duran, and Mark Monreal "conflicts with each other, with their statements previously given to the police, and with the forensic evidence produced at trial"; and (3) because Mata, Duran, and Monreal had lengthy criminal records.

A person commits murder if he either (1) intentionally or knowingly causes the death of an individual; or (2) intends to cause serious bodily injury

---

[12] *Johnson*, 23 S.W.3d at 8.

[13] *Id.* at 9.

[14] *Sims v. State,* 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

and commits an act clearly dangerous to human life that causes the death of an individual.[15]

The jury is the sole judge of the facts, the credibility of the witnesses and the weight to be given the evidence.[16] Therefore, the jury is free to believe or disbelieve all or part of any witness's testimony.[17] A factual-sufficiency challenge will not necessarily be sustained simply because the record contains conflicting evidence upon which the fact-finder could have reached a different conclusion.[18]

The evidence showed that appellant was a member of a Fort Worth street gang, Varrio Northside ("VNS"). Juan Rodriguez and David Mata were members of a rival gang, the Los Homeboys ("LHB"). Animosity between the gangs dated back to 1993 when Mata's older brother, LHB-gang-member Greg Mata, murdered VNS-gang-member Noah Soto.

---

[15] Tex. Penal Code Ann. § 19.02(b)(1), (2) (Vernon 2003).

[16] *Cain,* 958 S.W.2d at 407; *see* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979).

[17] *See Jones v. State,* 984 S.W.2d 254, 258 (Tex. Crim. App. 1998).

[18] *See Santellan v. State,* 939 S.W.2d 155, 164 (Tex. Crim. App. 1997) *cert. denied*, 535 U.S. 982 (2002).

On the night Rodriguez was killed, he and Mata were sitting in his car in the parking lot outside Jessica Ramirez's apartment. Appellant and Jesus Duran walked by and tried to see who was in the car.

Mata knew appellant did not like him because his brother had killed Soto years before. Mata asked Rodriguez to take him home. Rodriguez told him not to worry because Rodriguez and appellant were both members of another gang and had recently hung out together. Rodriguez exited the car alone and shook hands with appellant and Duran.

The two insisted that Mata also exit the car. Mata did so to avoid any trouble. Appellant asked for Mata's name. When Mata said, "David Mata," appellant lifted his shirt, drew a pistol, cocked it, put it back in his pants, and asked if he was Greg Mata's brother. Mata acknowledged that he was, the scene became tense, and Mata believed something would happen.

Appellant demanded Ramirez's cell phone "before [he did] something stupid." Mata heard appellant say into the phone, "Yeah, he's here right now, I got him here right now."

Rodriguez urged Mata to leave, insisting that he could keep appellant and Duran from doing anything. Eventually, Mata went around the apartment building to use the restroom and did not come back.

6

Realizing that Mata had gone, appellant "snapped," re-drew the pistol, pointed it at Rodriguez and ordered him into the car. Appellant instructed Duran to follow them. Not far from the apartment-complex exit, Duran saw appellant shoot Rodriguez.

From inside her apartment, Ramirez heard gunshots. She called appellant several times, who, when he finally answered, told her that he had shot Rodriguez.

Sometime later, appellant talked to Mark Monreal, an original VNS member and Soto's cousin. Appellant told Monreal that he had killed a friend of Greg Mata in a car to avenge Soto's murder. Appellant asked if the killing would promote him in the gang.

At the house where appellant was arrested, police found a Taurus pistol wrapped in a blue towel resting in a tree stump. Forensic testing linked the pistol to projectiles and cartridge cases recovered from the site of Rodriguez's killing.

Having reviewed all the evidence in a neutral light, we cannot say that the evidence supporting appellant's murder conviction is so weak that the verdict seems clearly wrong and manifestly unjust or that the verdict is against the

7

great weight and preponderance of the evidence.[19] Therefore, we find the evidence factually sufficient.[20] We overrule point one.

In point two, appellant claims that the evidence is factually insufficient to sustain his conviction for engaging in organized criminal activity because, even if he killed Rodriguez, his actions "were performed by [himself], alone, and not as part of a common scheme, organization, or combination[] to establish, maintain or participate as a member of a criminal street gang." He argues that "a single offense, committed by a single actor, even if given a genesis in gang activity" does not constitute engaging in organized criminal activity.

A person commits the offense of engaging in organized criminal activity if, with intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit . . . murder.[21] A criminal street gang is three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal

---

[19] *See Johnson*, 23 S.W.3d at 11.

[20] *See Watson*, 204 S.W.3d at 414; *Clewis v. State*, 922 S.W.2d 126, 133–34 (Tex. Crim. App. 1996).

[21] Tex. Penal Code Ann. § 71.02(a)(1) (Vernon Supp. 2008).

8

activities.[22] Under the plain language of § 71.02(a), a person may be convicted of engaging in organized criminal activity by individually committing murder.

Moreover, the evidence clearly established that appellant committed the offense of engaging in organized criminal activity. Appellant is a member of a criminal street gang, VNS, one of the larger gangs in Fort Worth, with three or more members. VNS has a common identifying sign or symbol and identifiable leadership. Its members regularly or continuously associate in the commission of criminal activities, including assaults, drug offenses, weapons violations, burglaries, and homicides.

Appellant drew a pistol from his pants, cocked it, and returned it to his pants when he learned that Mata shared his last name with someone who had killed a fellow gang member in the past. When appellant learned that Mata was the brother of the one who had killed his fellow gang member, the scene became tense and Mata feared that something would happen. Appellant made a telephone call, telling someone on the other end, "Yeah, he's here right now, I got him here right now."

When Mata left at the insistence of Rodriguez, and appellant realized that Mata was not coming back, he "snapped," pulling the gun on Rodriguez.

---

[22] Tex. Penal Code Ann. § 71.01(d) (Vernon 2003).

9

Appellant instructed Duran to follow him, and appellant and Rodriguez left in Rodriguez's car. After traveling a short distance, appellant shot Rodriguez.

Appellant told Monreal, a senior gang member in VNS, that he had killed a friend of Greg Mata's in a car to avenge the death of Monreal's cousin, Soto, whom Greg Mata had killed years before. Appellant asked Monreal if killing Rodriguez meant he could get his "stripes" in the gang, i.e., if he could move up in its hierarchy.

Mata testified that Rodriguez was killed because he was Mata's friend and "because he got [Mata] out of there." Mata testified that appellant was after him, was angry that Rodriguez had helped him, and decided to kill Rodriguez after Mata left.

Viewing all the evidence in a neutral light, we cannot say that the jury's verdict seems clearly wrong and manifestly unjust, nor that it is against the great weight and preponderance of the evidence. Because the evidence is factually sufficient to sustain the jury's verdict that appellant is guilty of engaging in organized criminal activity, we overrule point two.[23]

In his third point, appellant claims that the trial court erroneously admitted evidence that appellant was a member of the prison gang Tango Blast.

---

[23] *See Watson*, 204 S.W.3d at 414; *Clewis*, 922 S.W.2d at 133–34.

Texas Code of Criminal Procedure article 38.36(a) provides that in all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased.[24] This provision must be read in conjunction with Rules 403 and 404(b) of the Texas Rules of Evidence.[25] Reading the three provisions together, prior-relationship evidence is admissible unless its probative value is substantially outweighed by unfair prejudice, confusion of the issues, misleading of the jury, considerations of undue delay, or needless presentation of cumulative evidence.[26] Further, the evidence cannot be admitted solely to show that the accused acted in conformity with his bad character and murdered the victim.[27]

---

[24] Tex. Code Crim. Proc. Ann. art. 38.36(a) (Vernon 2005).

[25] *Smith v. State,* 5 S.W.3d 673, 679 (Tex. Crim. App. 1999); *see Bush v. State*, 958 S.W.2d 503, 505 (Tex. App.—Fort Worth 1997, no pet.).

[26] *Garcia v. State,* 201 S.W.3d 695, 703 (Tex. Crim. App. 2006), *cert. denied,* 127 S. Ct. 1289 (2007).

[27] *Garcia,* 201 S.W.3d at 703.

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion.[28] If the trial court's ruling was within the zone of reasonable disagreement, we must affirm.[29]

Here, appellant's membership in the Tango Blast gang was relevant to the circumstances of the murder. Mata testified that he was apprehensive when he saw appellant because he knew appellant did not like him because Mata's brother had killed Soto, years before. Rodriguez allayed Mata's fears by explaining that appellant and he were members of Tango Blast and that he and appellant had recently hung out together. Rodriguez's and appellant's membership in the same gang helped explain Rodriguez's belief that he could keep appellant and Duran from doing anything when Mata left the scene. The evidence was not offered solely to show that appellant murdered Rodriguez because he acted in conformity with his bad character.

Having held the evidence to be relevant to the circumstances of the murder, we must determine whether its probative value was substantially

---

[28] *Moses v. State,* 105 S.W.3d 622, 627 (Tex. Crim. App. 2003); *Montgomery v. State,* 198 S.W.3d 67, 79 (Tex. App.—Fort Worth 2006, pet. ref'd).

[29] *Moses,* 105 S.W.3d at 627; *Montgomery,* 198 S.W.3d at 79.

outweighed by the danger of unfair prejudice.[30] To make this determination, we must consider the inherent probative force of the proffered item of evidence along with the proponent's need for that evidence, and balance these considerations against the following four factors that favor exclusion:

(1) any tendency of the evidence to suggest [a] decision on an improper basis,

(2) any tendency of the evidence to confuse or distract the jury from the main issues,

(3) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and

(4) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.[31]

In this case, the probative force and the State's need to admit evidence that Rodriguez and appellant were members of the same gang outweigh the

---

[30] *Montgomery v. State,* 810 S.W.2d 372, 388–89 (Tex. Crim. App. 1990)(op. on reh'g).

[31] *Gigliobianco v. State,* 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

factors that favor exclusion. Although a defendant's membership in a gang such as Tango Blast — whose membership is open only to persons who have been incarcerated — could have a tendency to influence a jury to convict on the basis of the defendant's incarceration for a prior conviction, any such tendency is minimal here, where the evidence of guilt is so compelling. In addition to hearing eye-witness testimony from a person who saw appellant shooting Rodriguez, appellant's admission to Ramirez and Monreal that he shot Rodriguez was before the jury. The force of this evidence was strong enough to overcome any tendency the jury might have to convict on the basis of his prison gang membership. It was also unlikely that the prison gang membership would confuse and distract the jury, or be given undue weight given the compelling evidence of guilt.

Furthermore, the record shows that the prison gang evidence did not consume inordinate time and was not repetitious. Appellant's trial first mentioned that Tango Blast was a prison gang in her opening statement. Thereafter, over the next three days of trial and 449 pages of record, the State's evidence of appellant's membership in the gang appears on only five pages, including one devoted to mitigating evidence that a person could join the gang while being held in the county jail for a misdemeanor offense. Neither

appellant's trial counsel nor the State mentioned the membership in Tango Blast in closing argument.

Because the factors favoring exclusion do not substantially outweigh the probative force of the evidence and the State's need for it, we hold that the trial court did not abuse its discretion in admitting evidence of appellant's membership in Tango Blast under rule 403.  We overrule point three.

Having overruled all of appellant's points, we affirm the judgment of the trial court.

PER CURIAM

PANEL:  CAYCE, C.J.; HOLMAN and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 4, 2008